**BANK OF CLEARWATER and Douglas Westin, etc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 434–82T.**

United States Claims Court.

Jan. 23, 1985.

As Corrected Jan. 25, 1985.

Sherwin P. Simmons, Tampa, Fla., attorney of record for plaintiffs. William Kalish and Lucy T. Graetz, Tampa, Fla., of counsel.

W.C. Rapp, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

REGINALD W. GIBSON, Judge:

This tax refund suit, to recover alleged overpayments of federal estate taxes and assessed interest paid, comes before the court on plaintiffs' motion for summary judgment and defendant's cross-motion for partial summary judgment. To facilitate disposition of these motions, the parties have entered into a joint written stipulation of facts which was submitted to this court on May 17, 1983. However, the parties also agreed that if the plaintiffs do not prevail on their primary argument—that there is no statutory authority requiring that the $4.5 million gifts in question be included in the decedent's estate, *infra,*—a trial will be necessary to determine whether said gifts, made by the decedent within a year of her death, were in fact transferred in contemplation of death.[1] Jurisdiction of this action is based on 28 U.S.C. § 1491 (1982) and 26 U.S.C. § 7422 (1982).

The legal issues presented in this estate tax refund suit are three-fold:

1. Whether § 2035 of Title 26 U.S.C. (§ 2035, Internal Revenue Code of 1954), as it existed prior to the 1976 Tax Reform Act amendment, applies to gifts transferred before January 1, 1977, by decedents who died after December 31, 1976; stated another way, whether amended § 2035 repealed old § 2035 *in toto* so as to make both inapplicable to the transfers in issue;

2. Whether the applicable estate tax overpayment emanating from the allowance of additional deductions by the Service and concomitantly used to partially offset an estate tax deficiency constitutes a constructive payment of estate taxes for purposes of determining the maximum limitation on an estate tax refund pursuant to § 6511(b)(2)(B), Title 26 U.S.C. (1976); and

3. Whether an overpayment of estate taxes that results from the allowance of deductions taken for various litigation expenses, which include attorney fees, court costs, and personal representative fees, incurred by the estate in contesting an assessed tax deficiency, is recoverable beyond the maximum limit prescribed by 26 U.S.C. § 6511(b)(2)(B) (1976).

After considering the pleadings, the stipulation of facts, all of the briefs submitted by the parties, and following oral argument, the court concludes, for reasons hereinafter delineated, that the old § 2035, Title 26 U.S.C., as it existed prior to the 1976 Tax Reform Act (TRA) amendment, is the applicable statutory provision which is determinative of the standard requiring the inclusion of the value of said gifts in the decedent's estate. Therefore, as it will appear more clearly hereinafter, genuine issues of material fact exist, and a trial is required to determine the factual issue of whether the gifts were made in contemplation of death. The court will refrain from deciding the latter two issues, pending the outcome of the trial on the merits, because if the plaintiffs do not prevail on the merits, the remaining legal issues will become moot (*i.e.,* any refund due as a result of additional deductions for legal fees and other litigation expenses will not exceed the maximum limitation on refunds provided by § 6511(b)(2)(B)). Plaintiffs' motion for summary judgment will, therefore, be denied in part, and defendant's

---

1. Notwithstanding the foregoing, at oral argument counsel for plaintiffs advised the court that should an adverse § 2035 ruling issue, then in such case plaintiffs will most likely not litigate the "in contemplation of death" issue.

motion for partial summary judgment will be granted in part, as to issue No. 1. The court reserves ruling on the § 6511(b)(2)(B) issues presented in the parties' motions for summary judgment pending a trial on the merits.

## FACTS

For purposes of the cross-motions for summary judgment, the following operative facts have been stipulated and are found accordingly:

On July 21, 1976, Mrs. Shea, as grantor, executed an agreement creating an irrevocable trust (the "Trust") with her son Douglas Westin and the Bank of Clearwater as trustee. Concomitantly, she conveyed to the Trust cash and securities having a value of $3,500,000. The terms of the Trust provided that $1,000,000 was to be set aside for the benefit of her son Douglas, and $2,500,000 was to be set aside for the equal benefit of Mrs. Shea's five grandchildren. Also on July 21, 1976, Mrs. Shea made an outright gift of cash and securities totalling $1,000,000 to the three children of her deceased son Frederick, to be shared by them equally. Thus, in the aggregate, Mrs. Shea transferred to her relatives, on July 21, 1976, gifts totalling to the value of $4.5 million (the "gifts").

About ten months later, on May 22, 1977, Mrs. Shea died. At that time, she was a resident of Belleair, Florida. The plaintiffs, Douglas Westin and the Bank of Clearwater, were appointed co-personal representatives in administration of the Estate of Maude J. Shea, Deceased, on May 26, 1977. On or about February 22, 1978, the plaintiffs filed a federal estate tax return, Form 706 (the "Return") on behalf of the Estate of Maude J. Shea, with the Internal Revenue Service Center at Chamblee, Georgia, and timely paid the self-assessed federal estate tax liability shown on the return in the amount of $1,630,954.57.

2. All references to the Code are to the Internal Revenue Code of 1954.

3. The plaintiffs had previously filed a claim for refund (Form 843) on December 3, 1981, which

Subsequent to an audit examination of the Return, the Commissioner of Internal Revenue ("Commissioner") determined a deficiency in estate taxes against the plaintiffs in the amount of $552,660. On October 22, 1980, a deficiency of $552,660, plus interest of $112,523.09, was timely assessed. The Commissioner primarily determined the estate tax deficiency from an adjustment based on including in Mrs. Shea's gross estate the value of the $4,500,-000 in gifts Mrs. Shea made on July 21, 1976. This inclusion was premised upon the application of section 2035 of the 1954 Internal Revenue Code [2] (the "Code") to said gifts as it read *prior* to the effective passage of the Tax Reform Act of 1976, Pub.L. 94–455, 90 Stat. 1520 (the "Act").

In light of the aforementioned deficiency assessment, the plaintiffs paid an additional $552,660 in estate taxes and $112,340 in interest on November 18, 1980, and $183.09 in additional interest on December 8, 1980. On July 21, 1982, the plaintiffs timely filed with the District Director in Jacksonville, Florida, a revised [3] claim for refund (Form 843) regarding the alleged overpayments of estate taxes of $649,971.05 and interest of $112,523.09 (the "Claim"). Thereafter, in a letter dated July 29, 1982, the District Director disallowed the Claim.

## DISCUSSION

*Section 2035*

Prior to the passage of the Tax Reform Act of 1976, section 2035 ("old section 2035" which was then amended) read, in pertinent parts, as follows:

§ 2035. Transactions in contemplation of death.

(a) General rule.

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide

had been rejected by the District Director on December 24, 1981. This suit is based upon issues and facts presented in the revised Claim for refund.

sale for an adequate and full consideration in money or money's worth), by trust or otherwise, *in contemplation of his death.*

(b) Application of general rule.

*If the decedent within a period of 3 years ending with the date of his death ... transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041....* (Emphasis added.)

26 U.S.C. § 2035 (1970). Thus, under the old section 2035, transfers made *within three years* of a decedent's death were presumed to have been made in contemplation of death and the value of any such gifts were included in the decedent's gross estate *unless* the executor could prove to the contrary. That is to say, the presumption that gifts were made in contemplation of death, if made within three years of the decedent's death, was rebuttable. However, through the Tax Reform Act of 1976, Pub.L. 94–455, section 2001(a)(5), section 2035 of the Code was amended to eliminate the contemplation of death presumption and to provide for the automatic inclusion in the decedent's gross estate of all gifts (in excess of the $3,000 annual exclusion) made within the three-year period prior to the decedent's death without regard to the decedent's motive or intent. Consequently, the amended version of section 2035 ("new section 2035") reads, in pertinent part, as follows:

§ 2035. Adjustments for gifts made within 3 years of decedent's death

(a) Inclusion of gifts made by decedent

Except as provided in subsection (b), the value of the gross estate *shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a*

*transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.*

(b) Exceptions

Subsection (a) shall not apply to—

(1) any bona fide sale or an adequate and full consideration in money or money's worth, and

(2) any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a).

(c) Inclusion of gift tax on certain gifts made during 3 years before decedent's death

The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 by the decedent or his estate on any gift made by the decedent or his spouse after December 31, 1976, and during the 3-year period ending on the date of the decedent's death.[4] (Emphasis added.)

26 U.S.C. § 2035 (1976).

Critical to the threshold legal issue presented, subsection (d) of section 2001 of the Act prescribed the effective dates for the amendments to old section 2035 and reads as follows:

(d) EFFECTIVE DATES.—

(1) The amendments made by subsections (a) and (c)(1) shall apply to the estates of decedents dying after December 31, 1976; *except that the amendments made by subsection (a)(5) ... shall not apply to transfers made before January 1, 1977.* (Emphasis added.)

Since the decedent's gifts were made on July 21, 1976, and the effective date of the new section 2035 provided that "the amendments made by subsection (a)(5) [*i.e.,* section 2035 as amended] ... shall not apply to transfers made *before* January 1, 1977", both parties agree that the effective date

---

**4.** This section has since been partially repealed through the Economic Recovery Tax Act of

1981, which is, of course, inapposite to the facts presented in this case.

of the *new* section 2035 does not require the inclusion of the July 21, 1976 gifts in the decedent's gross estate for estate tax purposes. However, it is the plaintiffs' contention that there was no statutory authority as of the date of the decedent's death that also required the value of the gifts Mrs. Shea transferred in 1976, *supra,* to be included in her gross estate. This is so, the plaintiffs aver, because when section 2035 was amended and became law on October 4, 1976, the old section 2035 was repealed as it had existed and applied with respect to gifts made *before* January 1, 1977, by decedents dying after December 31, 1976. The plaintiffs thus maintain that because the law in effect at the time of the decedent's death (May 22, 1977) applies, and at the time of Mrs. Shea's death in 1977, the new section 2035 was on the books, but was *inapplicable* to pre-1977 transfers, then *a fortiori,* there is no applicable statute that pertains to Mrs. Shea's gifts because the old section 2035 was repealed *in toto* in October 1976 and the new section 2035 is explicitly inapplicable to such transfers. Consequently, the plaintiffs argue that due to an oversight or inadvertence, the amendment to section 2035 repealed old section 2035, leaving an estate tax hiatus as to both provisions with respect to the transfers in issue.

Conversely, the defendant argues that the pre-amended version of section 2035 applies to Mrs. Shea's gifts because the 1976 amendment had an impact on prior law (old section 2035) only to the extent Congress directed it to apply. Thus, the defendant contends that the 1976 amendment did not repeal the old section 2035 but rather had no effect on its application to such gifts made *in 1976 by decedents dying in 1977.* Moreover, the defendant maintains that the plaintiffs' theory creates a loophole in the estate taxation laws that is at odds with the legislative policy underlying amended section 2035.

■ Since the key to the resolution of the initial issue is the construction of *amended section 2035,* "[t]he starting point in any case involving construction of a statute is the language itself." *St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531, 541, 98 S.Ct. 2923, 2929, 57 L.Ed.2d 932 (1978). "It is elementary that the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Thus, if this court is confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning. *Hart v. United States,* 218 Ct.Cl. 212, 225, 585 F.2d 1025, 1032 (1978). However, to avoid absurd results, the court will, in exceptional circumstances, exercise its leeway to depart from the usual meaning of the words of a statute. *Gray v. United States,* 110 Ct.Cl. 661, 670, 76 F.Supp. 102, 104 (1948).

■ In 1977, the year Mrs. Shea died, it is clear and the parties so concede that the amended section 2035, under the 1976 Tax Reform Act, was not applicable to a decedent who died in 1977 but had transferred gifts in 1976. The court therefore agrees with the defendant (the Internal Revenue Service), the Tax Court, and the Fifth Circuit, for the reasons stated hereinafter, that to the extent the new section 2035 did not apply to Mrs. Shea's estate, the old section 2035 necessarily remained applicable to transfers made in 1976 by decedents dying in 1977. In that connection, the Tax Court, in *Estate of Gill v. Commissioner,* 79 T.C. 437, 440–41 (1982), *aff'd per curiam,* 711 F.2d 54 (5th Cir.1983), stated, in addressing the identical issue as presented here, that:

... We do not believe that Congress intended the amendment of section 2035(a) to leave a hiatus in coverage, exempting transfers made in contemplation of death prior to the passage of the Tax Reform Act of 1976 where the donor died after January 1, 1977. Nor do we believe Congress did so. For a

section is amended only in accordance with the effective-date provisions prescribed by Congress. As noted, *Congress specifically made the newly amended section 2035 inapplicable to transfers prior to January 1, 1977, leaving the old law intact as to these transfers.* An amendment eliminates the amended material only to the extent specified by Congress, and what it has specified in this instance is clear. (Footnote deleted.)

*... New legislation can only amend or replace old legislation to the extent that the legislators authorize the new bill to take effect.* Since the new legislation by its own terms specifically never became effective as to transfers prior to January 1, 1977, the old section 2035(a) was never amended or repealed as to such transfers and therefore continues in effect as to them. (Emphasis added.)

■ The plaintiffs take strenuous exception to the Tax Court's opinion, *supra,* arguing that the court should not have given credence to a general explanation of the Act prepared and disseminated by the staff of the Joint Committee on Taxation *after* the Act was passed wherein it was stated that "[t]he contemplation of death rules under prior law will apply to gifts made before January 1, 1977, where the decedent dies after December 31, 1976, and the transfer is made within 3 years of death." See General Explanation of the Tax Reform Act of 1976, Joint Comm. on Taxation, 94th Cong., 2d Sess. (1976), 1976–3 C.B. (Vol. 2) 542. While it is true, as the plaintiffs point out, that this Joint Committee Explanation (prepared by the staff) was "not ... reviewed by the tax committees" and reflected "only ... the staff's view as to the intent of Congress," it nonetheless represented "the effort of the staff of the Joint Committee on Taxation to provide an explanation of the Tax Reform Act of 1976 as finally enacted...." *Id.* at 3. It is this court's view that, although said Joint Committee Explanation prepared by the staff does not rise to the level of authority given to legislative history, we do not perceive it as totally worthless or unenlightening. It

is common knowledge that the congressional staff of the Joint Committee works very closely with the members of Congress in drafting legislation and undoubtedly has "eyeball knowledge" of the fundamental legislative purpose of a given piece of legislation. Absent any definitive legislative history that is more revealing, the court believes it is proper nevertheless, in the absence of any comparable contrary assertions, to give substantial weight to this Explanation. At the very least, it should receive no less recognition than a thesis of a text writer on a given point.

The plaintiffs stress, nevertheless, that old section 2035 was repealed *in toto* because section 2001(a)(5) of the Act states, preceding the quoted language of the new section 2035, that "Section 2035 (relating to the transactions in contemplation of death) is amended to read as follows:". Further, the plaintiffs point out that the heading of Section 2035 was changed from "Transactions in contemplation of death" to "Adjustments for gifts made within 3 years of decedent's death." It is the plaintiffs' position that these changes, along with the fact that Congress did not insert a savings clause, compel the conclusion that the old section 2035 was repealed. That is, the plaintiffs argue that as of October 1976, old section 2035 does not continue upon the effective date of amended section 2035, but rather upon said effective date, old section 2035 totally ceased to be efficacious and amended section 2035 applies.

In *United States v. Baker*, 189 F.Supp. 796, 802 (W.D.Pa.1960), *aff'd* 293 F.2d 613 (3rd Cir.), *cert. denied*, 368 U.S. 914, 82 S.Ct. 195, 7 L.Ed.2d 132 (1961), a case that the plaintiffs heavily rely on, the court stated that:

It was an early recognized principle of statutory construction that the words "amended to read as follows" in a statutory enactment set forth a legislative intent that all the law on the subject was to follow and that such language "evinces an intention to make the new statute a substitute for the amended statute exclusively", and that there is no need for

inconsistency in order for the amendment to operate as a repeal.

That court also stated that "[e]nactment of a different catchline is to be given significant effect in determining the intention of Congress." *Id.* While the legal principles raised in *Baker* may be viable under those facts, the facts in *Baker* are easily distinguishable from those presented here. First, in *Baker*, there was no effective date provision which indicated, as here, when the new law began. Conversely, in the instant case, the fact that section 2001(d) specifically states that "[t]he amendments made by subsections (a) and (c)(1) shall apply to the estate of decedents dying after December 31, 1976; *except that the amendments made by subsection (a)(5)* [relating to gifts made within three years of decedent's death] ... *shall not apply to transfers made before January 1, 1977"* is crucial in underscoring the fact distinctions between that case and the case at bar. (Emphasis added.) This court reads the underlined language to mean that the amendment to old section 2035 shall relate only to transfers made *after* December 31, 1976, *i.e.,* the amendment to old section 2035 is *specifically limited* to transfers made after December 31, 1976 (which is not this case). Given the well-settled principle that courts do not favor repeal by implication, this court is compelled to find that the amendment did not repeal old section 2035 in its application to pre-January 1, 1977 transfers. *Frost v. Wenie,* 157 U.S. 46, 58, 15 S.Ct. 532, 39 L.Ed. 614 (1895); *Graham & Foster v. Goodcell,* 282 U.S. 409, 425, 51 S.Ct. 186, 192, 75 L.Ed. 415 (1931).

Absent this effective date provision in the amended section 2035, the court would agree that such circumstance would manifest an indicia (but not necessarily determinative) that the old section 2035 was repealed. However, given section 2001(d), it is clear beyond cavil that the old section 2035 remains effective to gifts transferred before January 1, 1977 by decedents who died after December 31, 1976.

Moreover, in this situation, we do not view as overly significant on the threshold issue here the fact that the heading to amended section 2035 was changed. The difference in wording under the amended act merely reflects Congress's intent to make the donor's motive for the gift totally irrelevant. See H.R.REP. No. 94–1380, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.CODE CONG. & AD.NEWS 2897, 3368. Thus, rather than retain a heading that referred to the contemplation of death when that motive was immaterial, Congress simply changed the title to "Adjustments for gifts made within 3 years of decedent's death."

There is no doubt, as even the parties themselves agree, that the primary purpose for amending section 2035 in 1976 was to put an end to the "considerable litigation concerning the motives of decedents in making gifts." *Id.* at 3366. It was believed, as the House Report indicates, that the litigation problem, whether the transfer was in contemplation of death, "should be eliminated by requiring the inclusion of all such gifts in the gross estate without having to attempt to ascertain the motives of the decedent." *Id.* Logically then, there is no reason to conclude that Congress, in attempting to eliminate a litigation problem, repealed old section 2035 (intentionally or otherwise), and created a loophole regarding gifts made prior to January 1, 1977, by decedents who died after December 31, 1976.

There is not one scintilla of evidence that Congress intended, by said amendment, to reduce revenue sources which would have been the consequences of plaintiffs' hypothesis; in fact, the converse is inescapable. There are no words in either the Act or in the legislative history that even remotely suggest that the old section 2035 was repealed for the time period when the new section 2035 was inapplicable. As the Supreme Court noted in *Frost v. Wenie,* 157 U.S. 46, 58, 15 S.Ct. 532, 536, 39 L.Ed. 614 (1895):

> ... It is well settled that repeals by implication are *not to be favored.* And *where two statutes* cover, in whole or in part, the same matter, and *are not abso-*

*lutely irreconcilable, the duty of the court*—no purpose to repeal being clearly expressed or indicated—*is, if possible, to give effect to both.* In other words, it must not be supposed that the legislature intended by a later statute to repeal a prior one on the same subject, *unless the last statute is* so broad in its terms and *so clear and explicit in its words as to show that it was intended to cover the whole subject, and, therefore, to displace the prior statute.* (Emphasis added.)

See also *Hart v. United States,* 218 Ct.Cl. 212, 229, 585 F.2d 1025, 1034 (1978). Moreover, in cases addressing the interpretation of laws for the collection of revenue, courts are especially reluctant to imply a repeal. *Graham & Foster v. Goodcell,* 282 U.S. 409, 425, 51 S.Ct. 186, 192, 75 L.Ed. 415 (1931). Thus, logic and consistency dictate that on the date of Mrs. Shea's death, May 22, 1977, where a decedent died in 1977 but transferred gifts prior to the first of that year, old section 2035 applies. On the other hand, if the decedent died in 1977 and also transferred gifts in that year, new section 2035 clearly applies.

Construction of new section 2035 as argued by plaintiffs, in this court's view, would lead to an absurd result, and impute to Congress an irrational purpose clearly inimical to the obvious legislative policy of the statute as a whole. We find, therefore, that both statutes are not irreconcilable but rather each has a distinct non-overlapping purpose. Consequently, on these facts, we are constrained "to give effect to both" since there is not the slightest intimation of a purpose to repeal old section 2035, and we therefore hold that old section 2035 is applicable to the transfers in the case at bar.

*Construction Payment and Recovery Limit Under 26 U.S.C. § 6511(b)(2)(B)*

█ Because the court concludes that the old section 2035 applies to the gifts transferred by Mrs. Shea in 1976, it will be necessary to hold a trial to determine the factual issue of whether the gifts were made in contemplation of death. The plaintiffs have paid a total of $665,183.09 in estate tax deficiencies (plus interest) within the two-year period preceding the filing of the claim for refund filed on July 21, 1982.[5] It is the defendant's position that if the plaintiffs were to succeed on the merits (*i.e.,* the court finds that said transfer was not in contemplation of death), then in such case their recovery is limited to $665,-183.09.[6] However, the plaintiffs here seek a refund of the deficiency tax and interest assessed, plus any further overpayments that will be derived if allowed to take additional deductions for legal fees and other litigation expenses incurred in challenging this assessed deficiency, in the aggregate amount of $762,494.14.

The plaintiffs contend, therefore, that they should be allowed to recover more than $665,183.09 because, first, more than that amount was "paid" within the two years preceding the filing of the refund claim when the Commissioner, in determining the deficiency caused by including the gifts in Mrs. Shea's gross estate, subtracted additional deductions not previously taken by the estate. The plaintiffs maintain that because the applicable taxes on these additional deductions, which would otherwise constitute an overpayment, were offset against the resulting tax deficiency emanating from the inclusion of the value of the transfers (*i.e.,* $4.5 million) in 1976, a constructive payment resulted for purposes of determining the estate's recoverable limit under 26 U.S.C. § 6511(b)(2)(B) (1976). Additionally, the plaintiffs argue, that notwithstanding the limitation on recovery prescribed by 26 U.S.C. § 6511(b)(2)(B) the estate should nonetheless be permitted to

5. Both parties agree that the three-year statute of limitations prescribed by 26 U.S.C. § 6511(a) (1976) is inapposite because the plaintiffs filed the return on February 22, 1978, but did not file the pertinent refund claim until July 21, 1982, or more than four years thereafter.

6. 26 U.S.C. § 6511(b)(2)(B) (1976) states:
"If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim."

recover overpayments which will result from deductions for administrative expenses such as attorney fees, court costs, and personal representative fees incurred in contesting this deficiency. In support of their motion, plaintiffs rely on *Bankers Trust Co. v. United States*, 438 F.2d 1046 (2d Cir.1971). The defendant counters with the contention that the holding of *Bankers Trust Co.*, wherein on such an argument plaintiffs prevailed regarding a deduction for attorney fees, should be limited *only* to attorney fees and not to other costs.

It appears to the court at this time that if the plaintiffs should lose at the trial on the merits, the $665,183.09 paid in taxes and interest in November and December 1980 will undoubtedly cover whatever overpayments will result from allowable deductions taken for additional administrative expenses incurred because of this deficiency challenge. Therefore, rather than address issues in this opinion which may ultimately become moot, depending on the outcome of the trial on the merits, the court, in the interest of judicial economy, will abstain from deciding the latter two issues until such time as it becomes necessary. (We view this will occur only if plaintiffs prevail on the merits.)

THUS, IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is denied in part, and defendant's motion for partial summary judgment with respect to the section 2035 issue is granted. Both parties' motions for partial summary judgment regarding the section 6511(b)(2)(B) issues are reserved for future consideration as expressed above. Trial on the merits will be set at the scheduled pretrial conference date as set forth in the Pretrial Order which issues herewith.

At oral argument plaintiffs' counsel advised the court, on the record, that the "contemplation of death" issue will most likely not be litigated on the merits if plaintiffs do not prevail on their contention that neither the old nor the amended section 2035 is applicable to the transfers in issue. If that is plaintiffs' position, then the plaintiffs shall notify the court and defendant within seven (7) days from receipt of this opinion. Also, absent advice to the court that the additional allowable deduction issues will be settled, followed by a stipulation of dismissal, then the plaintiffs shall also at that time advise the court as to how they intend to proceed on such issues.

IT IS SO ORDERED.