**Jeffrey G. SHARP, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1358T.**

United States Court of Federal Claims.

Oct. 30, 1992.

Charles W. Hall, Houston, Tex., for Sharp.

Arthur C. Hoene, U.S. Dept. of Justice Tax Div., Cl.Ct.Div., Wash., D.C., for U.S.

## ORDER

WEINSTEIN, Judge.

The parties have filed cross-motions for summary judgment on plaintiff's first amended complaint, filed in this court pursuant to 28 U.S.C. § 1346(a)(1) and § 1491 and 26 U.S.C. § 7422, (1988),[1] on January 7, 1992, and claiming a tax refund of $59,736.00,[2] based on plaintiff's first amended 1987 return dated May 8, 1989.

Plaintiff alleges that there is no genuine issue of material fact and that he is entitled as a matter of law to carry over to and deduct in 1987 the amount of investment interest he paid and did not deduct in tax years 1983 through 1986 (hereinafter, *cf.* § 172(b), referred to as the "loss years"). *See* § 163(d)(2).

Defendant argues that all of the investment interest paid by Mr. Sharp in 1983 through 1986 and sought to be carried over to 1987 is not "disallowed investment interest" that may be carried over pursuant to § 163(d)(2), because all of it was not disallowable *"solely"* because of the investment

---

1. Unless otherwise noted, section references are to the Internal Revenue Code of 1954, 26 U.S.C. (I.R. Code or Code), as in effect in 1983 through 1986 as to the amount of the interest deductions for each such year or to the I.R.Code of 1986, with respect to the issue of what amounts were deductible in 1987, the year of plaintiff's contested return.

2. The demand consists of the total tax and interest paid by plaintiff for 1987 ($97,357), consisting of $63,329 paid with the 1987 return and $34,028 assessed and paid in 1991, less what plaintiff claims actually was due for 1987 ($37,-

621). Prior to filing the complaint in this suit (on August 4, 1991), plaintiff submitted a second refund claim for 1987, for $49,673. On December 20, 1991, defendant denied this claim. At the time of filing suit here, only plaintiff's first refund claim had been filed with the IRS and met the six month waiting requirement. Plaintiff's motion to amend the motion for summary judgment to add the second refund claim, based on defendant's December 20, 1991 disallowance of the claim, was allowed on January 10, 1992. Plaintiff's first amended complaint was filed on January 7, 1992. Defendant's first amended answer was filed on January 22, 1922.

income cap in § 163(d)(1) in each of the loss years, as required by § 163(d)(3)(E), that is, some was subject to the restrictions in § 172 of the Code, governing the deduction of net operating losses (NOLs), which defendant claims limits his carryover, to the amount of taxable income for the year *from* which the income is carried (the "loss year"), because plaintiff had little or no taxable income in several loss years. Alternatively, defendant argues that the legislative history of § 163(d) indicates that Congress did not intend to allow investment interest carryovers for any amounts exceeding taxable income in the loss year.

For the reasons stated below, the court grants plaintiff's motion for summary judgment and denies defendant's cross-motion for summary judgment.

## Facts

The following material facts are not in dispute.

For each of the tax years 1983 through 1986, plaintiff's "net investment income"—investment income less investment expenses—was as follows: 1983—$87,791; 1984—$16,321; 1985—$2,075; 1986—$0. Plaintiff paid "investment interest," defined by § 163(d)(3)(A) as "interest ... paid or accrued on indebtedness properly allocable to property held for investment," in the following amounts: 1983—$42,857; 1984—$89,111; 1985—$87,292; 1986—$92,362. Because each year the amount of investment interest paid exceeded the amount of his investment income plus $10,000, the ceiling for investment interest deductions in a taxable year set by § 163(d)(1), plaintiff did not deduct the full amount of the investment interest he paid in the same year. The amounts of investment interest plaintiff paid but did not deduct each year, the sum of which he claims he is entitled to carry over from those years and deduct in 1987, were as follows: 1983—$3,609; 1984—$62,790; 1985—$75,217; and 1986—$83,362, for a total of $223,978.

Plaintiff's taxable income/ <loss> in each of the loss years was: 1983—$82,300; $1984—$<5,852>; 1985—$42,954; 1986—$<6,894>.

Plaintiff's income tax return for 1987 was timely filed and reported 1987 "net investment income" of $431,727. Plaintiff deducted $151,409 of "investment interest" paid in 1987, plus $38,003 of "disallowed investment interest" carried over from tax years 1985 through 1986, as well as $8,081 in other deductions. This resulted in a reported taxable income of $234,234 and taxes of $63,329, which were paid in full.

In 1989, plaintiff filed an amended return for 1987 (his "first amended 1987 return"), based on a change in his method of accounting for that year (from the "specific identification" method to the "first-in/first-out" method).[3]

Plaintiff's change in accounting method changed his basis in investment securities sold in 1987 by $107,309, and thus increased his 1987 net investment income to $539,035. This also increased his deduction for investment interest paid in 1987 by $12,845, to $164,254 plus $138 in interest, or $164,392. He claims that the increased income also allowed him to increase his carried over "disallowed investment interest" deduction by $185,976, to $223,978, and his total investment interest deduction to $388,370 ($164,392 for interest paid in 1987, plus $223,978 in deductions carried over from previous years). The claimed adjustments (together with other, minor, deduction increases) decreased plaintiff's 1987 taxable income to $142,571 and his tax liability for 1987 by $25,665, the amount requested in the first amended refund claim. *See supra* note 2.

Defendant claims that the amount of investment interest plaintiff may carry over from a loss year is limited to his taxable income in that loss year, *i.e.*, to $3,609 for 1983, none for 1984, $42,954 for 1985, and none for 1986—for a total of only $46,-

---

**3.** Plaintiff also filed amendments to his 1985 and 1986 returns to reflect the change of accounting method. Defendant has accepted the change of method only for 1986 through 1988, allegedly because the request for a change was not timely filed within 180 days of the beginning of the 1985 tax year, as required by § 446 of the Code. However, this does not appear to affect the facts or arguments regarding the 1987 return at issue in this case.

563—[4] based on: § 163(d) "construed as a whole;" the general "scheme of interest deductibility in general" revealed in the legislative history of § 163(d); and the text of § 172(d)(4).

By letter of January 9, 1990, the Internal Revenue Service (IRS) accepted the amended return's full increase to 1987 net investment income, but disallowed most of the claimed increased deduction for carried over investment interest. On April 10, 1991, the IRS sent plaintiff a statutory notice of deficiency, assessing $34,028 in additional tax (consisting of $23,965 of unpaid taxes, plus penalties). Plaintiff paid these amounts on June 26, 1991. No formal notice of disallowance was filed within six months from the refund claim. *See supra* note 3. The first amended complaint prays for $59,736, plus interest.

■ The basic issue before this court is whether plaintiff's 1987 deduction pursuant to § 163(d)(1) for carried over investment interest is limited to the sum of his taxable income in the loss years.[5]

*The Statute*

■ The proper starting point in statutory analysis is the language of the statute as enacted. *See Mallard v. United States Dist. Court for the S. Dist. of Iowa,* 490 U.S. 296, 300–01, 109 S.Ct. 1814, 1817–18, 104 L.Ed.2d 318 (1989) (cited in *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991)).

The provision plaintiff relies upon here is § 163, which was enacted as part of the Internal Revenue Code of 1954, ch. 736, 68A Stat. 46. Defendant's argument also relies upon § 172 of the Code, particularly § 172(d)(4).

*Section 163*

Section 163(a), the general rule, provides that "[t]here shall be allowed as a deduction *all* interest paid or accrued within the taxable year on indebtedness." (Emphasis added.) Interest is deductible in full even if not allocable to a "trade or business" or to property held for production of income or investment, and even if it consisted of interest on consumer debts or other "personal" interest.[6]

Section 163(d), added in 1969, *see* Pub.L. No. 91–172, tit. II, § 221(a), 83 Stat. 574 (1969), for the first time instituted certain limitations on the deductibility of interest on *investment* indebtedness by noncorporate taxpayers. The 1976 amendment to § 163(d), *see* Pub.L. No. 94–455, 85 Stat. 523 (1976), made the revisions in effect during tax years 1983 through 1987, when § 163(d) provided (in pertinent part) (emphasis added):

(d) Limitation on interest on investment indebtedness

(1) In general

In the case of a taxpayer other than a corporation, the amount of investment interest (as defined in paragraph (3)(D)) ... shall be limited, in the following order, to—

**4.** Defendant's position here differs from the losing arguments of the Commissioner before the Tax Court and the Fourth Circuit in *Beyer v. Commissioner,* 916 F.2d 153, 154 (4th Cir.1990) (reversing Tax Court judgment in favor of Internal Revenue Service (IRS)), where the government contended that the amount a taxpayer could carry over from a loss year was subject to a taxable income cap, not only in the first loss year, but also in each subsequent year to which the deduction could be carried. Under that position, this taxpayer would not be permitted to deduct *any* amounts in 1987, because he had no taxable income in 1986.

Defendant contends that the IRS' approval of increasing the investment interest carryover deduction to $47,603 was improper because the Service failed to credit plaintiff with his personal exemption deduction of $1,040 in 1985 and, thus, that the permitted carryover amount should be $46,563 only.

**5.** This is not a novel issue. *See Beyer v. Commissioner,* 916 F.2d 153 (4th Cir.1990) (holding that the carryover of investment interest expenses under § 163(d)(2) is "unlimited" by the amount of "taxable income").

**6.** Interest expense has been deductible since 1913. *See* Revenue Act of 1913, ch. 16, § II, 38 Stat. 166, 167. The deduction for "personal interest" was phased out over several years, beginning in 1987, and is not deductible in tax years 1991 and thereafter, pursuant to § 163(d)(6)(A), as amended by the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2244.

(A) $10,000 ... plus

(B) the amount of the *net investment income* (as defined in paragraph (3)(A)), ...

(2) *Carryover* of disallowed investment interest

The amount of *disallowed investment interest* for any taxable year *shall* be treated as investment interest paid or accrued *in the succeeding taxable year.*

(3) Definitions

For purposes of this subsection—

(A) Net investment income

The term "net investment income" means the excess of *investment income* over *investment expenses.*

\* \* \* \* \* \*

(B) Investment income

The term "investment income" means—

(i) the gross income from interest, dividends, rents, and royalties,

(ii) the net short-term capital gain attributable to the disposition of property held for investment, and

(iii) any amount treated under sections 1245, 1250, and 1254 as ordinary income, but only to the extent such income, gain, and amounts are not derived from the conduct of a trade or business.

(C) Investment expenses

The term "investment expenses" means the deductions allowable under sections 162, 164(a)(1) or (2), 166, 167, 171, 212, or 611 directly connected with the production of investment income.

\* \* \* \* \* \*

(D) Investment interest

(i) In general

The term "investment interest" means interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment.

(E) Disallowed investment interest

The term "disallowed investment interest" means with respect to any taxable year, the *amount not allowable* as a deduction *solely by reason of the limitation in paragraph (1).*

26 U.S.C. § 163(d)(1)–(3) (1982 and West Supp.1985).

*Section 172*

Section 172 deals with net operating loss (business) deductions from gross income. Section 172(a) requires a net operating loss from one year to be carried back three years and (generally) forward fifteen years.

Section 172(b) deals with *"Net operating loss carrybacks and carryovers."* It provides (in pertinent part) (emphasis added):

*Net operating loss carrybacks and carryovers.*

(1) *Years to which loss may be carried*

\* \* \* \* \* \*

(2) *Amount of carrybacks and carryovers....* the entire amount of the net operating loss for any taxable year hereinafter in this section referred to as the "loss year" *shall* be carried [back three years and forward fifteen years, generally].... The portion of such loss which *shall* be carried to each of the other taxable years *shall* be the excess, if any, of the amount of such loss over the *sum* of the taxable income for each of the prior taxable years *to* which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior year *shall be computed—*

(A) with the modifications specified in subsection (d) *other than* paragraphs (1), *(4),* and (5) thereof....

(B) ... and the taxable income so computed shall not be considered to be less than zero.

\* \* \* \* \* \*

Section 172(c) defines an NOL: as "the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d)."

Section 172(d), *Modifications,* modifying the definition of "NOL" in subsection (c), is the portion of the statute upon which de-

fendant principally relies. This subsection, at paragraph (4), provides that, in the case of a noncorporate taxpayer like plaintiff, "the deductions ... allowable by this chapter that are not attributable to a trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business."

## Discussion
### Statutory Construction

The meaning of subsection (a) and paragraphs (d)(1) and (2) of § 163 is both clear and undisputed: The general rule of subsection (a) allows a taxpayer to deduct interest he has paid or accrued in a current tax year without limitation. Subsection (d)(1), however, sets out certain limitations on the deductibility by noncorporate taxpayers of *investment* interest, including a limitation in any given year to $10,000 plus the "net investment income" (defined as "the excess of investment income over investment expenses"). To mitigate the effects of the cap on carryovers from the loss year, § 163(d)(2) permits (in fact, requires) a taxpayer to carry over unused investment interest deductions, *i.e.*, to treat "disallowed investment interest" for any loss year as investment interest deductible *"in the succeeding taxable year."*

The dispute here, notwithstanding defendant's arguments otherwise, centers on the definition of "disallowed investment interest" in § 163(d)(3)(E), because this is the amount that "shall" be carried over from a loss year and treated as investment interest paid or accrued in the succeeding taxable year under § 163(d)(2), *i.e.*, that must be deducted in a succeeding year.

The narrow question is whether plaintiff's deduction was "not allowable as a deduction," in each of the tax years 1983 through 1986 "solely by reason of the limitation [to "net investment income" plus

$10,000] in paragraph (1) of subsection (d)," as required by § 163(d)(3)(E), or whether, as defendant contends, it was *not* "disallowed investment interest" because it was disallowed as a deduction by reason of § 172(d)(4).

Plaintiff maintains that "allowable" means not *permitted* as a deduction, as opposed to "not allowed" or "disallowed," which means not *taken* as a deduction, and that § 172(d)(4) merely *"disallows"* an NOL deduction (for both a current NOL and any NOL amounts carried over from loss years) to the extent any NOL not attributable to a trade or business exceeds gross income not derived from such trade or business, and does not make any deductions permanently "disallowable."

Plaintiff also argues that, from the context of § 163, it is evident that the word "solely" referred to investment interest deductions that were "not allowable" because of other Code restrictions on deductions expressly cross-referenced in § 163, for example, the prohibitions on the deduction of certain *interest* paid in connection with insurance policies in § 264, on *interest* on investments generating tax-exempt income in § 265, and on *interest* in certain transactions with related taxpayers in § 267.[7]  *See* § 163(d)(1).

Defendant, like both the Tax Court and the United States Court of Appeals for the Fourth Circuit, *see Beyer v. Commissioner,* 92 T.C. 1304, 1310 (1989), *rev'd,* 916 F.2d 153 (4th Cir.1990),[8] concedes that § 163 does not expressly state that there is a taxable income limitation on the carryover of investment interest deductions[9] or refer expressly to § 172. Nonetheless, defendant argues that the word "solely" in § 163(d)(3)(E) "requires" reference to the legislative history, which, in turn, refers to a taxable income cap or NOLs, and that this, implicitly at least, refers one to § 172.

---

**7.** Defendant concedes that these are examples of Code provisions making interest "not allowable as a deduction."

**8.** Plaintiff's counsel in this case also represented the prevailing plaintiff in *Beyer.*

**9.** After hotly disputing plaintiff's assertion that the government conceded that no "express lan-

guage in the Code" independently limits interest expense deductions, defendant admits there is no "taxable income limitation on the carryover of investment interest, *in haec verba."* Unable to make such fine distinctions, the court concludes that defendant has conceded the point.

There is no support in the statute for this argument, however.

Defendant also claims that the terms "allowable" and "allowed" are occasionally used by Congress "interchangeably," and that one cannot rest the plain "meaning" of a provision of the tax code on "a tax lawyer's appreciation of the connotations of 'allowable' deductions in unrelated tax code provisions, when Congress named the item at issue '*disallowed* investment interest.'" (Emphasis added.)

The court finds no support for defendant's argument regarding the definition in § 163(d)(3)(E). *See Hill v. United States*, 945 F.2d 1529, 1538 (Fed.Cir.1991) ("where Congress and the Department of the Treasury choose to employ a technical term ..., a taxpayer must be given reasonable notice when the term is intended to have other than its ordinary meaning in the Code"); *cert. granted*, — U.S. —, 112 S.Ct. 1758, 118 L.Ed.2d 422 (1992).

Contrary to defendant's assumption, the two words clearly have different meanings and are used differently in the Code. *See, e.g.,* § 1245(a)(2)(A) and (B) (rules for recomputed basis and depreciation adjustments require taxpayer to use amounts "allowable" unless taxpayer can establish that amount "allowed" was less); *cf. Day v. Heckler*, 735 F.2d 779 (4th Cir.1984) (while "landclearing expenses are an 'allowable' deduction, under the Code, such deduction will not be 'allowed' unless an election is made"). *See also,* I.T. 2944, 14-2 C.B. 126 (1935) (advising that under §§ 223(b) and 114(a) of the Revenue Act of 1932 and 1934, "[t]he word "allowable" designates the amount permitted or granted by the statutes, as distinguished from the word "allowed," which refers to the deduction actually permitted or granted by the Bureau [of the Treasury]").

Further, the operative term in § 163(d)(3)(E) is not the word "disallowed" in the defined term but, rather, the term "not allowable" in the definition itself. In other words, the meaning of the definition does not vary with a change in the defined term. Thus, the defined term "disallowed" has no independent significance.[10]

Although defendant flatly contends that § 172(d)(4) "plainly forbids" the carryover of non-business interest under § 163, the court concludes that § 172(d)(4) "plainly" does not.[11] Sections 163 and 172 deal with entirely different categories of deductions, based on entirely different theories. Investment interest income is not considered income from a trade or business and investment interest debt is not considered a tax or business expense. *See* § 163(d)(3)(B)(ii). *See generally,* Cheryl D. Block "The Trouble with Interest" 40 U.Fla.L.Rev. 690, 725 (1988). Thus, logically, it is unclear why there ever should be an overlap between the categories of investment interest deductions that are itemized deductions from taxable income for individual nonbusiness taxpayers, and NOLs, which are deductions from gross income allowed to businesses only.

Furthermore, § 172(d)(4) deals with *current year* deductibility of an NOL, that is, what amount may be deducted in a given *taxable year* to which a deduction has been carried forward or back, whereas defendant is arguing that it limits the amount that may be carried over from a *loss year*, which § 172(d)(4) plainly does not address.

It may be helpful to think of this in terms of an analogy to bank deposits. Thus, in a loss year, one would deposit or "bank" an amount, whereas one would "withdraw" that amount when it was used or allowed as a deduction in a subsequent tax year. Defendant is arguing over, and § 172(b) deals with, what may be "banked." Section 172(d) deals with what may be "withdrawn," *i.e.,* and applied as a deduction.

---

**10.** Interestingly, in the 1986 Code § 163(d), as rewritten, appears to permit an unlimited carryforward to succeeding years of the amount of investment interest not "allowed" as a deduction because it exceeded net investment income and eliminates the § 163(d)(3)(E) "solely" test.

**11.** Although § 172(d)(4) was in effect at the that time, defendant did not make this contention in the *Beyer* case, which was decided in 1990.

In this case, the "withdrawal" year is 1987—the tax year of the disputed refund claim—and this is the year to which § 172(d)(4) would relate if the dispute were over the amounts of *NOL* carryovers. The subsection of § 172 containing the "banking" or carryover rules, *i.e.,* prescribing what amount may be carried over and saved for use in subsequent or prior years, which defendant identifies as the issue here, is subsection (b), not subsection (d). Section 172(b) expressly deals with the issue of what amount may be carried over *from* a loss year, such as plaintiff's tax years 1983 through 1986, and not what amount may be taken in the tax year to which such deductions are carried over.

Furthermore, § 172(*b*), at paragraph (2) *"Amount of carrybacks and carryforwards,"* expressly states that § 172(*d*)(4), the paragraph defendant purportedly relies upon, shall *not* apply! [12]

*"Legislative history" of § 163(d)*

■ Defendant's argument based on the legislative history is weak. First, the court discerns no ambiguity in § 163(d)(2); thus, there is no occasion for recourse to the legislative history. *See Burlington N.R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citations omitted); *Martin J. Simko Constr. Inc. v. United States,* 852 F.2d 540, 542 (Fed.Cir.1988).

Moreover, even if relevant, the legislative history is not helpful to defendant. First, the statement defendant principally relies upon, in a Report of the House Committee on Ways and Means on the House version of the Tax Reform Act of 1969, H.R.Rep. No. 413, 91st Cong., 1st Sess. pt. 1 at 74 (1969) U.S.Code Cong. & Admin.News 1969 p. 1645; 1969–3 C.B. 200, 245–46 (1969 House Report), like any committee report, is not a good indication of

the intent of "all the necessary participants in the law enactment process." *See Thompson v. Thompson,* 484 U.S. 174, 191–92, 108 S.Ct. 513, 522, 98 L.Ed.2d 512 (1988) (stating that committee reports are "frail substitutes for bicameral vote upon the text of a law and its presentment to the President") (Scalia, J., concurring in the judgment). Nor is the 1969 House Report unequivocal. Also, the later Conference Report, on the bill actually enacted, includes no such statement.

The reiterations of the 1969 House Report statement in the so-called "Blue Book" prepared by committee staff *after* enactment, *see* Staff of the Joint Committee on Taxation, 91st Cong., 2d Sess., *General Explanation of the Tax Reform Act of 1969,* 100 (1970), and in the House Report on the 1976 Act (1976 Report) are not legislative *history* at all, and thus are utterly insignificant in this case. [13]

The 1969 House Report states:

Interest for which a deduction was disallowed in a year because of the application of the limitation, could be carried over to subsequent years and used to offset net investment income (including capital gains) arising in those years to the extent allowable under the limitation in such a year. A carryover would not be available ... for disallowed interest to the extent it exceeded the taxpayer's taxable income for the year (that is, to the extent the disallowed interest would not have reduced the taxpayer's taxable income).

H.R.Rep. No. 413, *supra.* *See also* H.R.Rep. No. 658, 94th Cong., 1st Sess. at 104 (1976) U.S.Code Cong. & Admin.News 1976, pp. 2897, 2999 (1976–3 C.B. (Vol. 2) 695, 796).

---

**12.** Defendant neither sets out § 172(b) in its voluminous Appendix, nor cites or discusses it in any brief.

**13.** *See, e.g., Birth v. Commissioner,* 92 T.C. 769, 774 n. 4 (1989) (Blue Book "technically not considered part of the legislative history of the Tax Reform Act of 1986"); *but see Federal Power Comm'n v. Memphis Light, Gas & Water Div.,* 411 U.S. 458, 471–72, 93 S.Ct. 1723, 1731, 36

L.Ed.2d 426 (1973) (relying on Blue Book explanation in interpreting a tax statute). *See also In re Sinclair,* 870 F.2d 1340, 1343 (7th Cir.1989) (terming Blue Book "losers' history"); *see generally Bank of Clearwater v. United States,* 7 Cl.Ct. 289, 294 (1985) (stating that Blue Book should be given some weight but should receive same recognition as the "thesis of a text written on a given point.").

The Blue Book issued one and one-half years later copied the second sentence of this statement virtually word for word, except that the phrase "the interest is paid or accrued" was added after "year," to indicate that the extent to which a "carryover" would not be available was to be judged in the year "the interest is paid or accrued." The 1976 Report repeated the foregoing statement and added the phrase "or increased a net operating loss." This is the first clear congressional reference to net operating losses, and thus, arguably, to § 172.[14]

The 1969 House Report refers to a *"taxable income"* cap and thus does not reflect the formulation defendant relies on in § 172(d)(4), which caps current year deductions *not* attributable to a trade or business, *i.e.*, other than NOLs, at the *"gross income* not *derived from the taxpayer's trade or business."* Nor does the 1969 House Report reflect the language or scheme of § 172*(b)*, because the "taxable income" limitation in § 172(b)(2) refers to the sum of the taxable years *to* which the *carryover* may be taken, whereas defendant contends that the taxable income limit applies to plaintiff's *loss years, i.e.,* that is limits the amount that may be carried over *from* a loss year.

The fact that the 1976 Report adds a reference to NOLs is, in this court's opinion, of no significance, since the report comes seven years after the legislative fact.[15]

Whatever minimal deference the statement in the 1969 House Report may deserve is even further reduced by the fact that it accompanied a bill that was rejected by the Senate and that, when modified by the conference committee,[16] contained a different definition of "disallowed investment interest," *to wit,* "amount not *allowable,"* rather than "amount *disallowed."* H.R.Conf.Rep. No. 782, 91st Cong., 1st Sess. at 300, *reprinted in* 1969 U.S.C.C.A.N. 2392, 2414. As discussed above, this is a critical change. Nor did the Conference Report repeat the 1969 House Report statement that there was a taxable income cap on carryovers.

Other portions of the legislative history reinforce the point that Congress' primary concern in 1969 was to curb the practice of using investment interest deductions to offset taxable income *other* than investment income, in a *current* year ("mismatching"), particularly the practice of deducting the expense from ordinary income but later realizing income thereon in the form of tax favored capital gains,[17] and in later con-

**14.** Defendant's contention that the "Blue Book" and the 1969 and 1976 House Reports' statements reflect the state of the law in 1969 regarding the nondeductibility of investment interest exceeding taxable income is unsupported by statutory, regulatory, or caselaw authority.

**15.** The IRS' instructions to Schedule 4952 ("Investment Interest Expense Deduction") beginning in 1984 (*fifteen years* after the enactment of § 163(d)), directing "non-inclusion of any amount of interest disallowed in 1983 that would have reduced taxable income below zero and would not have increased a net operating loss available for carryback or carryover" are also of scant, if any, relevance in interpreting a nonambiguous statute. *Cf. Aluminum Co. of Amer. v. Central Lincoln,* 467 U.S. 380, 104 S.Ct. 2472, 81 L.Ed.2d 301 (1984) (deference given to reasonable agency interpretation of statute). Rev.Rul. 86–70, 1986–1 C.B. 83, issued after the *Beyer* case was filed, *see Beyer,* 916 F.2d at 153, also is not dispositive on the question of Congress' intent in 1969, or binding on this court. *See Trainer v. United States,* 800 F.2d 1086, 1090 n. 7 (Fed.Cir.1986) (stating that a Revenue Ruling "is not binding on this court"), *cert. denied,*

480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987); *see generally* Rev.Proc. 78–24, § 3.01 (explaining that revenue rulings "are published for the information and guidance of taxpayers, Service officials, and others concerned").

**16.** The December 3, 1970 letter of transmittal accompanying the "Blue Book" disclosing that "[f]or the most part, where provisions which were unchanged in conferences were described in either the House or Senate report, this explanation is carried over in this document," appears not to apply to § 163(d)(2).

**17.** The 1969 House Report, at page 72, U.S.Code Cong. & Admin.News 1969, pp. 1645, 1709, in the section titled "General reasons for change" states (in pertinent part) (emphasis added):

Where the taxpayer's investment, however, produces little current income, the effect of allowing a *current* deduction for the interest is to produce a mismatching of the investment income and related expenses of earning that income. In addition, the excess interest, in effect, is used by the taxpayer to offset other income, such as his salary, from taxation.

gressional interpretations the provision was considered to allow an unlimited carryover for deductions in future years.[18]

Plaintiff here has not attempted to shelter other taxable income in any tax year from 1983 to 1986 when he received investment income. Rather, he seeks merely to offset nonbusiness income against expenses from the same type of nonbusiness activity (investment activity), a "matching" permitted in several other provisions of the Code. *See, e.g.,* § 170 (charitable contributions carryover); § 535 (net capital loss carryover); § 172 (net operating loss carryover). Thus, an *unlimited* carryover (unlimited in time, unlike the § 172 carryover, as well as in amount)—"banked" until a taxpayer had sufficient taxable *investment* income against which to offset the *investment* interest expense—appears fully consistent with Congress' purpose in enacting § 163(d).

In short, the spectre raised by defendant—that "allowing plaintiff a carryover would allow him to offset his "other" (non investment) income in later years"—is not threatening, since plaintiff clearly seeks to "shelter" only *investment* income, not other taxable income. Although "shelter" clearly *is* effected in a later tax year—any year when the amount of investment income earned or accrued is greater than the investment interest paid that year—shelter alone is not an impermissible result under this tax system, being, after all, the very purpose of *any* carryover.

In sum, defendant's arguments that this legislative history must be relied upon as indicating the true meaning of § 163(d) are insubstantial. Section 163(d) is not ambiguous and does not limit carryovers based on taxable income in a loss year. It merely limits investment interest deductions in a current taxable year to the amount of *investment* interest in that year, and limits deductions disallowable by other applicable tax laws, several of which, but not § 172, are expressly referenced in § 163. Had Congress intended to add *another* limitation to the investment interest deduction carryover provision in § 163(d)(1) in the form of a taxable income limit, it certainly could have done so expressly in the statute. Alternatively, § 163(d) could explicitly have referenced § 172(b) or § 172(d)(4).[19] *Compare* § 163(k) (cross-referencing numerous other deduction provisions of the Code, but not § 172).

■ When there is conflict between an unambiguous statute and its legislative history, the legislative history, particularly when equivocal, is to be accorded little or no weight:

> Legislative history is a step removed from the language of the statute, and hence, is not entitled to the same weight. When there is a conflict between portions of legislative history and the words of a statute, the words of a statute represent the constitutionally approved method of communication, and it would require "unequivocal evidence" of legislative purpose as reflected in the legislative history to override the ordinary meaning of the statute. "Reliance on legislative history in divining the intent of Congress is . . . . a step to be taken cautiously."

The Supplemental House Ways and Means Committee Report dated August 4, 1969 (part 2 of H.R. No. 91–413, *supra* ) provides an illustration of the operation of the carryforward of disallowed interest provision that makes no mention of any taxable income cap on amounts that may be carried over to succeeding taxable years. Section 163(d)(3)(E) is not even mentioned.

18. *See, e.g.,* Conference Committee Report on H.R. 10612 at 418, Tax Reform Act of 1976: "Interest deductions which are disallowed under these rules are subject to an unlimited carryover and may be deducted in future years (subject to the applicable limitation)."

19. While § 163(j)(6)(A), Pub.L. No. 101–239, tit. VII, § 7210(a), 103 Stat. 2330, references § 172, that subsection deals with investment interest deduction rules for related persons, which is not at issue here. However, it states (in pertinent part) that: "for purposes of that subsection, adjusted taxable income 'means taxable income' (i) computed without regard to- (I) ... (II) the amount of any net operating loss deduction under § 172." This supports the notion that Congress, although it had considered the applicability of § 172 in drafting § 163, found it *unnecessary* to cross-reference it there. As may be inferred from the dispute here, Congress' omission can hardly be blamed on the *obviousness* of the need to apply § 172 to § 163 there.

*Piper v. Chris–Craft Indus.,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977) (*citing Department of Air Force v. Rose,* 425 U.S. 352, 388–89, 96 S.Ct. 1592, 1611–12, 48 L.Ed.2d 11 (1976) (Blackmun, J., dissenting); *United States v. Public Utilities Comm'n,* 345 U.S. 295, 319, 73 S.Ct. 706, 719, 97 L.Ed. 1020 (1953) (Jackson, J., concurring); *Scripps–Howard Radio v. FCC,* 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942)); *see also Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (legislative history may help court discover, but may not change, the original meaning of the statutory language).

 Committee reports are particularly unreliable, especially when they conflict with the express provisions of a statute that is otherwise silent on the subject. *Cf. Demby v. Schweiker,* 671 F.2d 507, 510–12 (D.C.Cir.1981) (citing *TVA v. Hill,* 437 U.S. 153, 191, 98 S.Ct. 2279, 2300, 57 L.Ed.2d 117 (1978)).

To credit a committee report over the statute would elevate the narrow views of a legislative subgroup or of unelected congressional staff over the constitutional enactments of Congress and the President.[20] Committee reports provide scant evidence of even a probable or constructive legislative intent, because they are crafted by staff, not necessarily read by legislators, and are subject to packing via influence of interest groups and other legislative insiders. *See generally Hirschey v. FERC,* 777 F.2d 1, 7–8 & n. 1 (D.C.Cir.1985) (Scalia, J., concurring in the judgment); *see also In re Sinclair,* 870 F.2d 1340 (7th Cir.1989) (Easterbrook, J.) (clear statutory language prevails over clear committee report language); *Abourezk v. Reagan,* 785 F.2d 1043, 1054–55 & n. 11 (D.C.Cir.1986) (Ginsburg, J.) ("In sum, we think it plainly wrong as a general matter ... to regard committee reports as drafted more meticulously and as reflecting the congressional will more accurately than the statutory text itself. Committee reports, we remind,

do not embody the law."), *aff'd,* 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987).

 In sum, even unequivocal evidence of Congress' contrary purpose would not justify this court's ignoring the plain meaning of a statute in favor of its legislative history or supplying a new statutory provision. *See United States v. American College of Physicians,* 475 U.S. 834, 846, 106 S.Ct. 1591, 1598, 89 L.Ed.2d 841 (1986).

### Conclusion

Plaintiff is required by the plain language of § 163(d)(2) ("shall") to carry over to 1987 the amounts of investment interest paid but *not allowable* as a deduction in prior years solely by reason of the limitation in § 163(d)(1) to "net investment income" plus $10,000. For the reasons discussed above, the court concludes that neither the legislative history of § 163(d) nor § 172 limits plaintiff's right to carry over or deduct such amounts under § 163. Therefore, the court grants plaintiff's motion for summary judgment. The Clerk shall enter judgment accordingly.

---

**20.** *See generally* Kenneth W. Starr, *Observations About the Use of Legislative History,* 1987 Duke L.J. 371, 376.