Emily W. DAY, Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services, Appellee.

No. 83–1681.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1983.

Decided May 23, 1984.

Jan Pittman, Raleigh, N.C., for appellant.

Rudolph Renfer, Jr., Asst. U.S. Atty., Raleigh, N.C. (Samuel T. Currin, U.S. Atty., Gary H. Clemmons, Asst. U.S. Atty., Raleigh, N.C., Carl H. Harper, Regional Atty., James N. Stephens, Deputy Regional Atty., Washington, D.C., Sharon F. Adams, Asst. Regional Atty., Atlanta, Ga., Dept. of Health and Human Services, on brief), for appellee.

Before WIDENER and ERVIN, Circuit Judges and HOFFMAN,* Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

Appellant-claimant, Emily W. Day, appeals from a judgment of the district court affirming the Secretary's finding that claimant did not have sufficient quarters of coverage to obtain the insured status required for entitlement to retirement benefits.

Mrs. Day filed for early retirement insurance benefits in December 1980, upon attaining the age of 62. To qualify for such benefits claimant needed at least 29 quarters of coverage. *See* Social Security Act §§ 202(a), 214(a), as amended, 42 U.S.C. §§ 402(a), 414(a). Mrs. Day's Social Security earnings record credited her with 32 quarters, and indicated that she was entitled to benefits. After reviewing Mrs. Day's application, the Department of Health and Human Services (Department) removed 5 quarters of coverage, thereby placing her 2 quarters below the 29 quarters necessary to qualify, and denied her request for benefits. The 5 quarters that were removed from Mrs. Day's record related to her earnings in 1977 (4 quarters removed) and 1978 (1 quarter removed).

Under the rules pertaining to self-employed workers, quarters of coverage for social security purposes are gained after attaining a threshhold level of net earnings over $400 for a particular year. *See* 42 U.S.C. § 411(b)(2). Mrs. Day's original tax return for 1977 shows that she received income of $546.00, and listed total expenses of $140.00 for land clearing. Thus, she claimed net earnings of $406. Her original 1978 income tax return shows that Mrs. Day received income of $496.98 and had land clearing expenses of $95, for total net earnings of $401.98.

As justification for removing her quarters of coverage for those years, the De-

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

partment noted that Mrs. Day failed to take any deduction in 1977 and 1978 for taxes. According to the Department, net earnings from self-employment are defined in a manner that requires all deductions allowed by the Internal Revenue Code (Code) be calculated, regardless of whether or not they are actually taken. Claimant paid total taxes in 1977 of $222.74, and $182.11 in 1978. The Department concluded Mrs. Day's reported income fell far below the $400 level when deductions for taxes are included.

Mrs. Day filed a timely request for reconsideration of this decision. At the reconsideration proceeding, Mrs. Day submitted an amended tax return which showed business taxes of $15.87 and land clearing expenses of $124.13 for 1977. These amended deductions still totaled $140.00 and her declared earnings did not change. Mrs. Day also submitted amended tax returns for 1978 which showed $11.67 in business taxes and $83.33 in land clearing expenses. This new return totaled $95 and, like claimant's 1977 amended filing, did not change her declared earnings.

The Reconsideration Determination held that the total taxes payable on the farm property must be deducted from gross income, not a prorated amount of the taxes on land claimant actually used for business purposes. The Department concluded that in 1977, Mrs. Day incurred tax expenses of $222.74 and land clearing expenses of $656.25 (the total figure from bills she paid T.T. Kemp Construction Co. for land cleared in 1977), for total expenses of $878.99. Deducting this amount from her earnings of $546, Mrs. Day's earnings for 1977 amounted to a loss of $332.99. For 1978, the Department concluded that Mrs. Day had tax expenses of $182.11 and land clearing expenses of $95, totaling $277.11, which left her with net earnings of $219.87. Mrs. Day objected that the total taxes paid included taxes on personal property which is not properly deductible. This objection was explicitly overruled, and her benefits were again denied.

Mrs. Day then appealed the denial to Administrative Law Judge Raymond Drew (ALJ), who affirmed the Reconsideration Determination in all respects.

Once again, Mrs. Day appealed, this time to the Appeals Council. In conjunction with this appeal she filed another amended tax return, now showing $55 for tax expenses and $40 for land-clearing expenses in 1978. The Appeals Council again denied her application, but used different figures than those relied upon by the ALJ and the Reconsideration Determination. The Appeals Council accepted the $40 figure for land clearing expenses, and admitted that properly deductible taxes are limited to business taxes, but concluded that the proper amount of business taxes was $58.17, not $55. The difference between these figures is due to Mrs. Day's characterization of a $3 tax increase as a non-deductible capital expenditure, while the Appeals Council concluded that the same increase should be considered a deductible business expenditure. The Appeals Council applied these new figures to her gross income of $496.98 and concluded that Mrs. Day had a net income of $398.81 in 1978— amounting to $1.19 below the $400 needed to gain quarters of coverage. The Appeals Council made no mention of the calculation for 1977, and it appears from the record that Mrs. Day did not appeal the ALJ's determination as to that year. Mrs. Day completed the entire administrative process in her unsuccessful effort to obtain retirement insurance benefits without the assistance of counsel.

Finally, after procuring counsel, Mrs. Day exercised her right to judicial review of the adverse determination. Her case was referred to Judge John Larkins, who in turn referred it to Magistrate Charles K. McCotter, Jr. Mrs. Day again submitted an amended tax return, now listing $35 in land clearing expenses and $58.17 in business taxes for 1978; and, for 1977, her return indicated $70 in land clearing expenses and $55.16 in business taxes. Magistrate McCotter disregarded Mrs. Day's $35 figure for land clearing expenses in 1978, and, without citing any specific fig-

ures for 1977, recommended Summary Judgment for the Secretary. Mrs. Day had also submitted an alternative filing in the form of a letter by a CPA which indicated that no expenses for land clearing were deductible. This letter was considered but not addressed by the Court. Judge Larkin issued an order accepting the memorandum and recommendations of Magistrate McCotter. This appeal followed:

The multitude of figures and amendments make these transactions difficult to follow. Only gross income for both years is not in dispute. The tables below separate out the different positions:

| Claimant's Figures | 1977 | 1978 |
|---|---|---|
| 1st filing (original claim) | 546.00 gross income<br>−140.00 land clear. expenses<br>406.00 net earn. | 496.98 gross income<br>−95.00 land clear. expenses<br>401.98 net earn. |
| 2nd filing (at reconsideration and ALJ) | 546.00 gross income<br>−124.13 land clear. expenses<br>−15.87 bus. taxes<br>406.00 net earn. | 496.98 gross income<br>−83.33 land clear. expenses<br>−11.67 bus. taxes<br>401.98 net earn. |
| 3rd filing (before appeals council) | No submission | 496.98 gross income<br>−40.00 land clear. expenses<br>−55.00 bus. taxes<br>401.98 net earn. |
| 4th filing and present claim (before magistrate) | 546.00 gross income<br>−70.00 land clear. expenses<br>−55.16 bus. taxes<br>420.84 net earn. | 496.98 gross income<br>−35.00 land clear. expenses<br>−58.17 bus. taxes<br>403.81 net earn. |
| Alternative filing (also before magis.) | 546.00 gross income<br>−55.16 bus taxes<br>490.84 net earn. | 496.98 gross income<br>−58.17 bus. taxes<br>434.81 net earn. |
| Department Initial | 546.00 gross income<br>−140.00 land clear. expenses<br>−222.74 total tax expenses<br>183.26 net earn. | 496.98 gross income<br>−95.00 land clear. expenses<br>−182.11 total tax expenses<br>219.87 net earn. |
| Reconsideration | 546.00 gross income<br>−656.25 land clear. expenses<br>−222.74 tax expenses<br>−332.99 net earn. (loss) | 496.98 gross income<br>−95.00 land clear. expenses<br>−182.11 total tax expenses<br>−219.87 net earn. |
| ALJ | 546.00 gross income<br>−656.25 land clear. expenses<br>−222.74 tax expense<br>−332.99 net earn. (loss) | 496.98 gross income<br>−95.00 land clear expenses<br>−182.11 total tax expenses<br>219.87 net earn. |
| Appeals Council | No submission | 496.98 gross income<br>−40.00 land clear. expenses<br>−58.17 bus. taxes<br>398.81 net earn. |
| Magistrate | No submission | 496.98 gross income<br>−40.00 land clear. expenses<br>−58.17 bus. taxes<br>398.81 net earn. |

Urging this Court to reverse the Department's denial of her benefits, Mrs. Day primarily argues that the Secretary's decision was not supported by substantial evidence insofar as it was based on erroneous interpretations of the tax laws regarding deductions allowed for taxes and land clearing expenses. Claimant's contention is that the Secretary made a mistake of law, and there is no factual dispute.

 The Secretary relied on the authority of 20 C.F.R. § 404.821 to *sua sponte* remove quarters of coverage from Mrs. Day's earnings record. That section reads in its entirety:

Before the time limit ends for any year, we will correct the record of your earnings for that year for any reason if satisfactory evidence shows SSA records are incorrect. We may correct the record as the result of a request filed under § 404.820 or we may correct it on our own.

The plain language of this regulation places on the Department the burden of showing by satisfactory evidence that an earnings record is incorrect before a change can be made. This interpretation of the allocation of the burden of proof recognizes that the earnings records maintained by the Social Security Administration (SSA) are, and should be, entitled to presumptive validity. The Secretary apparently agrees with this position: "The sole issue before this court in this matter is whether the decision of the Secretary that the appellant does not have sufficient quarters of coverage for insured status is supported by substantial evidence." (Appellee's brief, at 10). Without passing on the possible difference between "satisfactory evidence" and "substantial evidence," this Court finds that under either quantum of proof the Department has failed to carry its burden.

The regulation under which the Secretary calculated Mrs. Day's net earnings, in pertinent part, defines net earnings from self employment as:

(1) Your gross income, as figured under subtitle A of the Code [Internal Revenue Code], from any trade or business you carried on, less deductions attributed to your trade or business that are allowed by that subtitle;

20 C.F.R. § 404.1080. Referring to this regulation, the Secretary contends that, for social security purposes, all deductions allowed by the tax code must be included when calculating net income—regardless of whether, for tax purposes, such deductions were in fact taken by a claimant. This interpretation by the Secretary places an extraordinary and onerous responsibility on the Social Security Administration. In effect, the Department becomes a tax expert when calculating a social security claimant's net income from self-employment. Tax deductions which are not taken by a claimant will nevertheless be included when computing net income if they are "allowed" by the Code. Likewise, improper tax deductions which are taken by a claimant must be excluded when computing net income because such improper deductions are literally not "allowed" by the Code. This approach is fraught with obvious difficulties, and it is based on the dubious premise that there is one objectively correct and identifiable set of deductions that apply to a claimant in any given year. Nevertheless, consistent with the traditional deference accorded an agency interpreting its own regulations, this Court will abide by the Secretary's interpretation for the purpose of resolving this appeal.

It is significant, however, that this regulation operates to incorporate by reference the income figuring provisions of the tax code. We have held that a Secretary's interpretation of external law is not entitled to the same deference given interpretations of an agency's internal statutes and regulations. *Kasey v. Richardson*, 462 F.2d 757, 759 (4th Cir.1972). This is so because the major reason for deferring to the Secretary—the expertise of an agency within its specific province—has no application when laws unrelated to Social Security concerns are implicated.

The Secretary made two distinct errors in the calculation of Mrs. Day's net income

when applying the deductions allowed by the Code. The first error relates to the deduction for land clearing expenses; the second error relates to deductions for taxes.

As stated in the facts, Mrs. Day's original tax return listed expenses of $140 for land clearing in 1977 and $95 for land clearing in 1978. The Secretary substituted these figures with land clearing expenses of $656.25 in 1977 and $40.00 in 1978. Expenses for land clearing are deductible under the procedures outlined in § 182(a) of the tax code as follows:

> A taxpayer engaged in the business of farming *may elect* to treat expenditures which are paid or incurred by him during the taxable year in the clearing of land for the purpose of making such land suitable for use in farming as expenses which are not chargeable to capital account. *The expenditures so treated shall be allowed as a deduction.*

26 U.S.C. § 182(a) (emphasis added). Specific regulations were issued by the IRS prescribing the manner in which an election may be accomplished. *See* 26 U.S.C. § 182(e). Mrs. Day contends, and the Secretary does not dispute, that she failed to make the required election. Under the language of § 182(a), then, her land clearing expenses cannot be "allowed" as a deduction.

■ The Secretary responds that Mrs. Day's failure to make an election is irrelevant as concerns the Social Security computation of her net income. Instead, the Secretary insists, the relevant fact is that land clearing expenses are an "allowable" deduction under the Code and therefore must be included. The distinction between an "allowable" deduction and an "allowed" deduction is not insignificant. While land clearing expenses are an "allowable" deduction under the Code, such deduction will not be "allowed" unless an election is made.

The regulation specifying the calculation of net income resolves this dilemma in favor of Mrs. Day. Regulation § 404.-1080(a)(1) pointedly refers to deductions that are "allowed" by the Code. As was just indicated, § 182(a) unequivocally dictates that in the absence of an election, deductions for land clearing expenses are *not* "allowed" by the Code. This conclusion is buttressed by use of identical language in both sections, and it appears inescapable. Thus, no amount of land clearing expenses should be deducted from Mrs. Day's gross income for the years 1977 and 1978.

The second error made by the Secretary occurred when the Department deducted the total amount of taxes paid by Mrs. Day. The Secretary acknowledges that only the prorated amount of business taxes is allowed as a deduction by the Code, and the $58.17 figure used by the Appeals Council for 1978 reflects this change in position. Curiously, the Appeals Council failed to similarly correct the tax figure it applied to Mrs. Day's income for the year 1977. The Secretary argues that Mrs. Day failed to appeal the Reconsideration Determination for the year 1977, so the Appeals Council was not required to examine the calculation for that year.

■ This response is a fundamental misstatement of the Secretary's responsibility in this matter. The Appeals Council was confronted with the figures for both years. When it concluded that the proper amount of business taxes for 1978 was $58.17, the Appeals Council was immediately aware of the fact that the $222.74 tax deduction applied by the Department for 1977 was incorrect. Even more astounding, the Appeals Council explicitly recognized and relied on the correct figure for business taxes in 1977, $55.16, when it calculated the amount for 1978. *See* Joint Appendix, at 85–86. The failure of the Appeals Council to apply the correct figure to 1977 is inexcusable.

First, Mrs. Day appeared pro se and the Secretary should have assisted her where an obvious error existed without fault on her part. *See generally Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir.1980). Second, and more important, the incorrect figure left standing by the Appeals Council was

actually supplied by the Department—not Mrs. Day—in its efforts to correct her improper calculation of net earnings. The record reflects that Mrs. Day informed the Department at least as early as the Reconsideration Determination that the total tax figure is not allowed as a deduction under the Code. This sequence of events shows that the Department itself made a mistake in the process of "correcting" Mrs. Day's earnings record. It is incongruous for the Appeals Council to then assert that its own acknowledged error need not be corrected unless Mrs. Day specifically appeals that error. The regulation under which Mrs. Day's earnings record was reopened unconditionally states that the Department may reopen to correct an earnings record. This presumes that when the Department undertakes such an endeavor, it will do so properly, and once opened, the Department's obligation continues until the record stands corrected. Mrs. Day's failure to object is therefore immaterial.

Relying on the figures supplied by Mrs. Day and conceded by the Secretary on this appeal, this Court finds that the proper deduction for business taxes in 1977 amounts to $55.16.

On the basis of the facts presented, the correct calculation of Mrs. Day's net earnings from self-employment, arrived at by subtracting the deductions allowed by the Code from Mrs. Day's gross income, should be:

| 1977 | 1978 |
|---|---|
| 546.00 gross income | 496.98 gross income |
| −55.16 bus. tax | −58.17 bus. tax |
| $490.84 | $438.81 |

Thus, Mrs. Day's income for both of these years surpass the $400 level. The figures used by the Secretary to revoke Mrs. Day's quarters of coverage, arrived at through an improper interpretation of the tax code, do not provide sufficient evidence to support the Secretary's decision.

Accordingly, the Secretary's ruling in this matter is hereby REVERSED, and this Court orders that all of the removed quarters of coverage be reinstated, with directions to the District Court that JUDG-

MENT BE ENTERED in favor of appellant.