## LEONARD J. AND SADIE HOLDEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21102-89.     Filed February 10, 1992.

*Charles J. Escher,* for petitioners.
*Michael A. Urban,* for respondent.

### OPINION

NIMS, *Chief Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1980 in the amount of $706,133. The sole issue for decision is whether petitioners must recompute their alternative minimum tax (AMT) to take into account a net operating loss (NOL) carryback to the year at issue. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

### Background

This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. The relevant facts may be summarized as follows.

Petitioners Leonard J. and Sadie Holden were married during the year at issue and resided in Alice, Texas, at the time they filed the petition. On their joint individual income tax return for 1980, petitioners reported taxable income of $2,137,444 and a tax liability, after credits, of $1,438,686. Petitioners' taxable income reflected a section 1202 deduction of $3,487,008, which amount was 60 percent of the net long-term capital gains realized by petitioners in 1980. Although

pursuant to section 57(a)(9)(A) the $3,487,008 capital gains deduction constituted a tax preference item, no AMT was originally due for 1980 because petitioners' regular tax of $1,438,686 exceeded the AMT calculation for that year. See the version of section 55 in effect for 1980, quoted *infra.*

In 1983, petitioners incurred an NOL which they carried back to 1980. Petitioners did not recalculate the AMT due for 1980 after they carried back the NOL.

By statutory notice of deficiency dated June 8, 1989, respondent determined a deficiency of $706,133 for the taxable year 1980. On August 28, 1989, petitioners timely filed a petition for redetermination of respondent's deficiency determination.

The parties agree that petitioners are entitled to an NOL carryback of $1,409,820 for 1980. Respondent determined, however, that after allowance for this carryback, and as a result thereof, petitioners' AMT for 1980 exceeds the regular tax.

Respondent first determined that after application of the 1983 NOL carryback, petitioners are liable for a regular tax of $131,706. Next, after taking into account the NOL, respondent recomputed petitioners' AMT for 1980. Respondent reduced petitioners' adjusted gross income as originally reported on their 1980 Form 1040 by the amount of petitioners' NOL carryback, which yielded a tentative AMT liability of $1,039,308.

Respondent therefore determined an AMT of $907,602, which is the amount by which petitioners' tentative AMT ($1,039,308) exceeds petitioners' regular tax for 1980 ($131,706). See sec. 55, *infra.* Respondent arrived at the deficiency amount of $706,133 by subtracting amounts previously assessed on petitioners' account for 1980 of $333,175 from the corrected tax liability of $1,039,308 ($131,706 regular tax plus $907,602 AMT) for 1980.

## Discussion

As indicated, the issue for decision is whether petitioners must take into account the NOL carryback in computing their AMT for 1980.

Section 55 imposes an alternative minimum tax on noncorporate taxpayers. The AMT did not come into the Code until 1978, when it was added by the Revenue Act of 1978, Pub. L. 95-600, sec. 421, 92 Stat. 2871. As originally enacted, section

55 did not explicitly address NOL's. In 1982 Congress substantially revised section 55, effective for taxable years beginning after December 31, 1982, at which time there was introduced the concept of the alternative minimum tax NOL as part of the computation of the AMT. See Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 201, 96 Stat. 411. Since this case involves 1980, the TEFRA version of section 55 is, of course, not applicable.

Petitioners argue that since pre-TEFRA section 55 is silent on whether an NOL must be considered in the AMT calculation, we must look to the legislative history to determine whether Congress intended to include NOL's in the AMT calculation. Section 55, in effect in 1980, provided in pertinent part:

SEC. 55(a). ALTERNATIVE MINIMUM TAX IMPOSED.—In the case of a taxpayer other than a corporation, if—
 (1) an amount equal to the sum of—
  (A) 10 percent of so much of the alternative minimum taxable income as exceeds $20,000 but does not exceed $60,000, plus
  (B) 20 percent of so much of the alternative minimum taxable income as exceeds $60,000 but does not exceed $100,000, plus
  (C) 25 percent of so much of the alternative minimum taxable income as exceeds $100,000, exceeds
 (2) the regular tax for the taxable year,
then there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess.
 (b) DEFINITIONS.—For purposes of this section—
  (1) ALTERNATIVE MINIMUM TAXABLE INCOME.—The term "alternative minimum taxable income" means gross income—
   (A) reduced by the sum of the deductions allowed for the taxable year,
   (B) reduced by the sum of any amounts included in income under section 86 or 667, and
   (C) increased by an amount equal to the sum of the tax preference items for—
    (i) adjusted itemized deductions (within the meaning of section 57(a)(1)), and
    (ii) capital gains (within the meaning of section 57(a)(9)).

For purposes of subparagraph (A), a deduction shall not be taken into account to the extent such deduction may be carried to another taxable year.
  (2) REGULAR TAX.—The term "regular tax" means the taxes imposed by this chapter for the taxable year * * * reduced by the sum of the credits allowable under subpart A of part IV of this subchapter (other than under sections 31, 39 and 43). For purposes of this paragraph, the amount of the credits allowable under such subpart shall be determined without regard to this section.

In sum, to determine whether and to what extent AMT is due for a given year, section 55 first requires that the regular tax be computed. The regular tax is essentially a taxpayer's normal tax liability determined without regard to the AMT provisions and reduced by certain miscellaneous credits. Sec. 55(b)(2). Next, a taxpayer must determine the amount of alternative minimum taxable income by adding back to gross income certain tax preference items. Sec. 55(b)(1). Finally, the alternative minimum taxable income is applied against the percentages of section 55(a)(1), and the taxpayer's AMT is the amount that the taxes imposed under section 55(a)(1) exceed the regular tax of section 55(a)(2).

Petitioners correctly point out that there is no specific reference to NOL's in section 55. Petitioners therefore invite our attention to the legislative history accompanying the enactment of the AMT provisions. In particular, petitioners refer us to the Senate report, which states in part:

The amount of income subject to the alternative minimum tax is gross income reduced by all deductions (*other than any net operating loss deduction*) and by any nonpreferential net operating loss and increased by the amount of tax preferences. * * * [S. Rept. 95-1263, at 204 (1978), 1978-3 C.B. (Vol. 1) 502; emphasis added.]

Thus, petitioners argue that the NOL carryback should be disregarded for purposes of the AMT provisions. We disagree.

The Senate report that petitioners cite accompanies a different version of the bill than the one finally enacted into law. As proposed by the Senate, section 55(b)(1) read:

(1) ALTERNATIVE MINIMUM TAXABLE INCOME.—The term "alternative minimum taxable income" means gross income—
    (A) reduced by the sum of the deductions allowed for the taxable year (*other than the deduction allowable under section 172*), and
    (B) reduced by the nonpreferential net operating loss deduction (determined under subsection (d)), and
    (C) increased by an amount equal to the items of tax preference (as defined in section 57(a)).
[H.R. 13511, 95th Cong., 2d Sess., sec. 421 (1978); emphasis added.]

As ultimately enacted, section 55(b)(1)(A) did not include the parenthetical language of the Senate amendment proposing to exclude NOL's from the alternative minimum taxable income computation. Instead, section 55(b)(1)(A) provides that gross income is to be "reduced by the sum of the deductions allowed

for the taxable year". We also note that the conference agreement makes no mention of excluding NOL's from the AMT calculation. H. Conf. Rept. 95-1800, at 267 (1978), 1978-3 C.B. (Vol. 1) 601. Therefore, the language of the Senate report cited by petitioners is irrelevant since the statutory language to which it relates was not enacted, and petitioners' reliance on the Senate report is misguided.

A net operating loss deduction may be characterized as a deduction for the taxable year in the net amount of net operating loss carryovers and carrybacks to such year. Sec. 172(a). Section 55(b)(1) requires taxpayers to calculate alternative minimum taxable income by reducing gross income "by the *sum* of the deductions allowed for the taxable year". (Emphasis added.) There is nothing in the language of section 55(b) or the legislative history which would limit the term deductions to exclude NOL carrybacks. Therefore, we hold that the phrase "sum of the deductions allowed" includes a section 172 NOL deduction.

Next, petitioners argue that to find that they are liable for AMT would be to penalize them for investing in capital assets and would frustrate congressional intent. Petitioners allege that the "entire purpose of the new alternative minimum tax adopted in the Revenue Act of 1978 and in effect in 1980 * * * was to encourage investment in capital * * * assets", and to include the NOL in computing the AMT "defeats Congress's original purpose in first enacting the alternative minimum tax". Petitioners misconstrue the legislative history.

The "entire purpose" of the AMT is not, as petitioners contend, merely to encourage capital investment. The reason for the AMT is to promote tax equity by ensuring that capital gains are subject to a reasonable amount of tax and to require wealthy taxpayers to pay at least some tax. See, e.g., *Okin v. Commissioner,* 808 F.2d 1338, 1340 (9th Cir. 1987), affg. T.C. Memo. 1985-199; H. Rept. 95-1445, at 123 (1978), 1978-3 C.B. (Vol. 1) 297. Petitioners are correct in asserting that Congress enacted the AMT provisions in 1978 because it felt the previous add-on minimum tax "has adversely affected capital formation and that the purpose for which the present minimum tax was enacted can be accomplished better, in the case of capital gains, by the implementation of an alternative minimum tax

on capital gains". H. Rept. 95-1445, *supra,* 1978-3 C.B. (Vol. 1) 296.

However, that is not to say that the AMT exists solely to encourage capital investment. Rather, Congress enacted the AMT because it felt the AMT accomplished the purpose for which the add-on minimum tax was enacted, namely tax equity, without unduly hindering capital formation. H. Rept. 95-1445, *supra,* 1978-3 C.B. (Vol. 1) 296. Therefore, we find petitioners' appeal to congressional purpose unpersuasive.

Accordingly, we find that petitioners should have recomputed their regular tax and alternative minimum tax for 1980 taking into account the NOL carryback from 1983.

To reflect the foregoing,

*Decision will be entered for respondent.*