RANDOLPH W. LENZ AND KARIN LENZ, PETITIONERS
*v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 9709–91.          Filed September 30, 1993.

*Richard A. Frederick,* for petitioners.
*James E. Schacht,* for respondent.

OPINION

WRIGHT, *Judge:* Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows:

*Additions to tax*

| Year | Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
|------|-----------|--------------------|--------------------|-----------|
| 1986 | $13,937 | $697 | 50% of the interest due on $13,937 | $3,484 |
| 1987 | 51,376 | 2,569 | 50% of the interest due on $51,376 | 12,844 |

After concessions by the parties, the sole issue for our consideration is whether a taxable income limitation applies to the carryover of investment interest under section 163(d).[1] Petitioners allege that the carryover of investment interest expense to succeeding years under section 163(d) is not limited by the amount of petitioners' taxable income for the current year. This issue was first litigated in *Beyer v. Commissioner,* 92 T.C. 1304 (1989), revd. 916 F.2d 153 (4th Cir. 1990), in which this Court held that a taxable income limitation applies with respect to the carryover of investment interest under section 163(d). The Court of Appeals for the Fourth Circuit reversed our holding finding that the carryover provision of section 163(d) applies regardless of the taxpayer's total taxable income for the year. Upon reconsideration of our opinion in *Beyer,* we now think it to be incorrect; therefore, for reasons set forth below, we hold that the carryover of investment interest expense to succeeding years under section 163(d) is not limited by the amount of petitioners' taxable income in the current year.

This case was submitted fully stipulated, and the stipulated facts are found accordingly. Petitioners resided in Fort Lauderdale, Florida, at the time they filed the petition in this case. During the years at issue, petitioners were married and filed joint Federal income tax returns. Petitioners' investment interest paid, net investment income (plus

[1] All section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

$10,000),[2] taxable income, and excess investment interest paid for years 1981 through 1987 are as follows:

| Year | Investment interest paid | Net investment income + $10,000 [1] | Taxable income | Excess investment interest paid |
|------|------|------|------|------|
| 1981 | $31,965 | $14,216 | ($24,866) | $17,749 |
| 1982 | 29,805 | 13,752 | (60,679) | 16,053 |
| 1983 | 63,320 | 27,750 | (10,714) | 35,570 |
| 1984 | 36,297 | 30,870 | 92,737 | 5,427 |
| 1985 | 37,719 | 41,997 | (25,686) | -0- |
| 1986 | 39,653 | 11,029 | (19,464) | 28,624 |
| 1987 | 27,905 | [2] 932,644 | 127,050 | -0- |

[1] The $10,000 figure is increased by $15,000 for 1983 and 1984.
[2] The 1986 amendment to sec. 163(d) limits the deduction for investment interest to the amount of net investment income. Thus, the $10,000 amount is not added to this figure.

In 1981, 1982, 1983, 1984, and 1986, petitioners incurred investment interest expense in amounts greater than their net investment income plus $10,000 ($25,000 for 1983 and 1984). Petitioners claimed a carryover into 1987 for excess investment interest paid in 1981, 1982, 1983, 1984, and 1986. To take 1 year for example, in 1981, petitioners had net investment income of $4,216 and could therefore claim a current deduction of $14,216 of the $31,965 investment interest they paid during the year. Sec. 163(d)(1)(A) and (B). The excess $17,749 must qualify as "disallowed investment interest" under section 163(d)(2) in order to be carried over to succeeding years. The focus of this case is whether the excess investment interest in each of the above-mentioned years qualifies under section 163(d)(2) for carryover treatment.

Respondent contends that petitioners' carryovers from 1981, 1982, 1983, 1985, and 1986 are limited by the amount of their taxable income for those years and urges this Court to adhere to its opinion in *Beyer v. Commissioner, supra.*[3] Petitioners, on the other hand, argue that section 163(d) contains no such limitation on the amount of their carryovers.

[2] For 1983 and 1984, the $10,000 figure specified in sec. 163(d)(1) was increased as to petitioners by $15,000, under sec. 163(d)(7)(A)(i).

[3] Appeal of the instant case would lie in the Court of Appeals for the Eleventh Circuit, and we are therefore not bound by the Court of Appeals for the Fourth Circuit's holding in *Beyer v. Commissioner,* 92 T.C. 1304 (1989), revd. 916 F.2d 153 (4th Cir. 1990). *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Section 163(d) provides the following:[4]

(1) IN GENERAL.—In the case of a taxpayer other than a corporation, the amount of investment interest (as defined in paragraph (3)(D)) otherwise allowable as a deduction under this chapter shall be limited, in the following order, to—

(A) $10,000 * * *, plus

(B) the amount of the net investment income * * *, plus the amount (if any) by which the deductions allowable under this section (determined without regard to this subsection) and sections 162, 164(a)(1) or (2), or 212 attributable to the property of the taxpayer subject to a net lease exceeds the rental income produced by such property for the taxable year. * * *

(2) CARRYOVER OF DISALLOWED INVESTMENT INTEREST.—The amount of disallowed investment interest for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year.

(3) DEFINITIONS.—For purposes of this subsection—

(A) NET INVESTMENT INCOME.—The term "net investment income" means the excess of investment income over investment expenses. * * *

* * * * * * *

(E) DISALLOWED INVESTMENT INTEREST.—The term "disallowed investment interest" means with respect to any taxable year, the amount not allowable as a deduction solely by reason of the limitation in paragraph (1).

Petitioners argue that the plain meaning of the express language of section 163(d) authorizes an unlimited carryover as the statute contains no mention of a taxable income limitation. Petitioners focus on the "not allowable as a deduction" language in section 163(d)(3)(E) interpreting such to mean that the amount not allowable as a deduction by reason of section 163(d)(1) is the excess of the investment interest over the sum of the net investment income plus $10,000; the remainder is carried over.

Respondent focuses on the term "solely" in section 163(d)(3)(E), arguing that the section 163(d)(1) limitation must be the only reason why the deduction is not allowable.[5] If there is some other reason why a taxpayer cannot take the

---

[4] Sec. 163(d) was originally enacted in 1969 and was amended in 1976 and 1986. The interest carryovers that petitioners claim in the case at issue arose in the years 1981 through 1986. The 1986 amendment to sec. 163(d), which was made by the Tax Reform Act of 1986, Pub. L. 99-514, 511(a), 100 Stat. 2244, applies only to interest paid or incurred in tax years beginning after Dec. 31, 1986; therefore, that amendment does not apply in determining petitioners' carryovers. Thus, the version of sec. 163(d) that applies in this case is the version in effect after the 1976 amendment and before the 1986 amendment.

[5] The term "solely" has been deleted from sec. 163(d) as the entire definition of "disallowed investment interest" was eliminated by the Tax Reform Act of 1986.

deduction, i.e., he or she does not have sufficient taxable income in the year the interest was paid to take full benefit of the deduction, then, according to respondent, there is more than one reason why he or she is unable to take the deduction, and the carryover is limited to the amount of taxable income.

Thus, in the above-mentioned example for 1981, petitioners argue that the entire $17,749 of remaining investment interest is carried over to 1982, whereas respondent argues that petitioners have no carryover to 1982 because they had zero taxable income in the year the interest was paid, 1981. Consistent with that reasoning, respondent contends that none of petitioners' excess investment interest in 1982, 1983, 1985, or 1986, qualifies for carryover treatment because petitioners had no taxable income in those years either.

*"Allowed Deduction" vs. "Allowable Deduction"*

The parties disagree on the meaning of the terms "allowed deduction" and "allowable deduction". Section 163(d)(3)(E) defines "disallowed investment interest", which is the amount that may be carried over to the succeeding year, as the amount *"not allowable"* as a deduction solely by reason of the limitation in paragraph (1). Petitioners argue that there is a distinction between allowable and allowed deductions as they are used in the Code. Petitioners contend that the amount allowable or not allowable under a specific Code section is not dependent upon whether the amount is actually allowed or disallowed as a deduction on a taxpayer's return; i.e., whether they actually realize a tax benefit. Therefore, petitioners argue that it is irrelevant that their excess investment interest in any given year was greater than their taxable income and would thus produce no tax benefit in that year were they able to take the full amount of the excess as a current deduction. This is so according to petitioners, because allowable deductions are deductible regardless of tax benefit. Respondent contends that the distinction between these terms has no significance in the instant case in that they have equivalent meanings in section 163(d) although they may have different meanings in some other contexts. We disagree.

Generally, courts have held that words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. See *United States v. Merriam,* 263 U.S. 179, 187 (1923). Throughout the Code, a distinction is made between the terms "allowable deduction" and "allowed deduction", which distinction is not insignificant. *Day v. Heckler,* 735 F.2d 779, 784 (4th Cir. 1984). Unfortunately, as with many terms of art in the area of tax law, these terms are often interchanged with one another, causing confusion. We must rely on the words of the statute as generally understood, and to do otherwise would be to redraft the statute. *United States v. Locke,* 471 U.S. 84, 95-96 (1985). "Allowed" and "allowable" have fixed meanings in the tax arena, and we interpret statutes using these terms in light of their understood meanings except where to do so would create absurd results. See *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 542-543 (1940).

"Allowable deduction" generally refers to a deduction which qualifies under a specific Code provision whereas "allowed deduction", on the other hand, refers to a deduction granted by the Internal Revenue Service which is actually taken on a return and will result in a reduction of the taxpayer's income tax. See *Reinhardt v. Commissioner,* 85 T.C. 511, 515-516 n.6 (1985); see also sec. 1.1016-3(a)(1)(i)(a), Income Tax Regs. Respondent in fact defined the terms "allowable" and "allowed" in I.T. 2944, XIV-2 C.B. 126 (1935), as follows:

The word "allowable" designates the amount permitted or granted by the statutes, as distinguished from the word "allowed" which refers to the deduction actually permitted or granted by the Bureau.

Thus, one might have an item of expense which is allowable as a deduction; however, the deduction is not allowed. In *Day v. Heckler, supra* at 784, for example, it was noted that certain land clearing expenses were an "allowable deduction" under the Code; however, such deduction would not be "allowed" unless the taxpayer made an election to take such deduction.

Thus, there is an amount allowable or statutorily authorized under section 163(d)(1) which may be deducted as investment interest expense for the taxable year. There is also an amount which is not allowable as a deduction for investment interest expense for the taxable year which is

carried over to the succeeding year and generally equals the excess of such expense over the taxpayer's net investment income plus $10,000. Sec. 163(d)(3)(E). Petitioners' excess investment interest was not allowable as a current deduction solely by reason of paragraph (1) of section 163(d) because such interest exceeded the specific statutory limits regardless of the amount of petitioners' taxable income. Thus, we find that the carryover of investment interest to succeeding years applies regardless of the amount of petitioners' taxable income in the current year; i.e., regardless of whether petitioners would have realized a tax benefit in the current year.

*Legislative History*

We find nothing ambiguous in the statute, and, accordingly, feel controlled by the clear language. The parties, however, argue the point, and the majority of this Court in *Beyer v. Commissioner, supra,* relied upon it; therefore, we will readdress the legislative history of section 163. The primary piece of legislative history that comes into play here is the House report accompanying the original bill, H.R. 13270, which provides the following:

Interest for which a deduction was *disallowed* in a year, because of the application of the limitation, could be carried over to subsequent years and used to offset net investment income (including capital gains) arising in those years to the extent allowable under the limitation in such a year. *A carryover would not be available, however, for disallowed interest to the extent it exceeded the taxpayer's taxable income for the year (that is, to the extent the disallowed interest would not have reduced the taxpayer's taxable income).* [H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 246; emphasis added.]

Respondent relies heavily upon this language contained in the House report, although the statutory language to which it relates was never enacted. See *Holden v. Commissioner,* 98 T.C. 160, 164 (1992); see also H.R. 13270, 91st Cong., 1st Sess., sec. 221 (1969). It is important to note that the House report accompanied a proposed bill which did not contain this language, which was rejected by the Senate on other grounds not at issue in this case, and was modified in conference. Even the proposed House bill, therefore, did not mention a taxable income limitation. The conference committee modified the House version of the bill with respect to investment

interest changing the definition of disallowed investment interest as follows:

The term "disallowed investment interest" means, with respect to any taxable year, the *amount not allowable* as a deduction solely by reason of the limitation in paragraphs (1) and (2)(A). [Tax Reform Act of 1969, Pub. L. 91-172, sec. 221, 83 Stat. 487, 575; emphasis added.]

We find that these changes were not insignificant. The proposed House bill did not contain the term of art "not allowable" but instead contained the phrase "amount disallowed". The modified version above replaced the term "disallowed" with "not allowable", and nowhere mentioned a taxable income limitation. Additionally, the conference report stated: "Appropriate modification is made for the carryover of excess investment interest which may not be currently deducted". H. Conf. Rept. 91-782 (1969), 1969-3 C.B. 644, 658.

It is curious why, despite an explicit statement made in the House report, neither the Senate report nor the conference report nor the statute itself, for that matter, mentions any taxable income limitation. Respondent errs in making the contention that a taxable income limitation is so obviously inherent in the statute that Congress saw no need to provide for it expressly.

Respondent argues further that the statement made in the above-quoted House report was reiterated in the General Explanation of the Tax Reform Act of 1969 prepared by the Staff of the Joint Committee on Taxation (General Explanation of the Tax Reform Act of 1969) and is therefore further evidence of congressional intent to place a taxable income limitation on the carryover of investment interest.[6] We do not agree. The General Explanation of the Tax Reform Act of 1969 was issued after the fact, authored by congressional staff not by Congress, and in this case, merely parroted the passage in the House report. Furthermore, we find that the General Explanation of the Tax Reform Act of 1969 is not authoritative where, as in the instant case, it has no support in the statute itself. See *McDonald v. Commissioner,* 764 F.2d 322, 336-337 n.25 (5th Cir. 1985), affg. T.C. Memo. 1983-197.

---

[6] See Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1969 (J. Comm. Print 1970).

In statutes levying taxes, the literal meaning of the words employed is most important for interpreting such statutes and is not to be extended by implication beyond the clear import of the language used. *Crooks v. Harrelson,* 282 U.S. 55, 61 (1930); *United States v. Merriam,* 263 U.S. 179, 187-188 (1923); *Masonite Corp. v. Fly,* 194 F.2d 257, 260-261 (5th Cir. 1952). In *Miller v. Commissioner,* 836 F.2d 1274, 1283 (10th Cir. 1988), the Court of Appeals for the Tenth Circuit stated:[7]

Legislative history is a step removed from the language of the statute and, hence, is not entitled to the same weight. When there is a conflict between portions of legislative history and the words of a statute, the words of the statute represent the constitutionally approved method of communication, and it would require "unequivocal evidence" of legislative purpose as reflected in the legislative history to override the ordinary meaning of the statute. * * *

We find that the legislative history underlying section 163(d) does not constitute unequivocal evidence of Congress' attempt to place a taxable income limitation on the carryover of investment interest. Thus, we follow the statute's literal words which do not require such limitation.

*Prior Statute*

Respondent asserts that petitioners' interpretation of section 163(d) significantly changes the law and creates a deduction where previously none had been available. It was in fact Congress which significantly changed the law creating a carryover where none had previously been available. Prior to the Tax Reform Act of 1969, the section 163 deduction was in fact limited by the amount of a taxpayer's taxable income. It is also a fact that prior to the Tax Reform Act of 1969, no carryover for investment interest was provided. All interest paid or accrued during the taxable year was currently deductible. The Tax Reform Act of 1969 placed a limitation on the deduction to curb abuse and provided for a carryover of the excess. Currently, the statute provides for a carryover; therefore, it is incorrect to limit such to the amount of taxable income simply because that was the case before a carryover was provided. Generally, a taxpayer's current deductions will be limited to the amount of taxable income he or

---

[7] See also *Huntsberry v. Commissioner,* 83 T.C. 742, 747 (1984).

she has in a given year where no carryover provision is provided. Therefore, we find that respondent's argument with respect to the prior statute is invalid.

*Policy*

Lastly, we find nothing in the legislative history of section 163 which leads us to conclude that our result is at variance with the policy of the legislation. Prior to the Tax Reform Act of 1969, section 163 allowed individual taxpayers a deduction for all interest paid or accrued during the taxable year without regard to any specified limitation in the statute pertaining to investment interest. As a result, many wealthy taxpayers were borrowing substantial amounts for investment purposes and investing in growth stocks which provided little or no short-term yield. Section 163 allowed a current deduction for this investment interest expense and was used by taxpayers to offset ordinary income while the income finally realized from long-term investments enjoyed capital gains treatment producing a mismatching of investment income and the related expenses of earning that income. See Hearings on H.R. 13270 Before the Senate Comm. on Finance, 91st Cong., 1st Sess. 637-640 (1969). Section 163 was enacted in response to these concerns providing for a limitation on the current deduction for investment interest; i.e., a taxpayer's net investment income plus $10,000 with the remainder carried over to succeeding years.

Thus, the basic purpose for enacting the investment interest deduction limitation and carryover was to provide for the matching of investment income with investment expenses over time. Placing a taxable income limitation on the carryover of investment interest expense, however, appears to heavily discriminate against those taxpayers who borrow funds to invest in growth stocks with long-term yields as opposed to those taxpayers who borrow funds for investments which have short-term returns. It seems to be logical that the investment interest expense should continue to be carried over until such time when the yield from a long-term investment is realized. To cut these investors off from their carryovers in years in which they have too little taxable income does not serve the purpose for enacting the limitation.

Accordingly, we find nothing in the Tax Reform Act of 1969, its legislative history, or the stated policy behind its enactment, which requires petitioners' carryover of investment interest to succeeding years be limited by the amount of their taxable income in the current year. We hold further that this Court will no longer follow its opinion in *Beyer v. Commissioner,* 92 T.C. 1304 (1989), but agrees with the Fourth Circuit's opinion. See also *Sharp v. United States,* 27 Fed. Cl. 52 (1992). To reflect the foregoing and concessions,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

HAMBLEN, SHIELDS, CLAPP, SWIFT, JACOBS, PARR, WELLS, RUWE, WHALEN, BEGHE, CHIECHI, and LARO, *JJ.,* agree with this majority opinion.

---

BEGHE, *J.,* concurring: I agree with and join the majority opinion on the close question that I think this case presents. I write separately only to try to parry the following thrusts in Judge Tannenwald's dissent, dissenting op., p. 274-275: "As felicitous as it may be to provide for matching of investment income with investment expenses and for minimizing the loss of tax benefits which may flow from my position on the issue herein", section 172, which also "deals with carryovers, specifically limits its benefits to business losses and excludes nonbusiness losses", and that "The majority's conclusion as to the scope of section 163(d) represents an erosion of the dichotomy embodied in section 172."

I would observe that there is a statutory provision which felicitously indicates that the "dichotomy embodied in section 172" is not all that clear cut, as a matter of general tax law. For the taxable years in question for which the excess investment interest was paid and carried over by petitioners, the Internal Revenue Code provided, as it continues to do, that individuals are entitled to unlimited carryovers of nonbusiness capital losses, without any limitation, express or implied, based on the absence of taxable income during the years in which they occurred. Sec. 1212(b)(1). It therefore seems to me that the allowance of investment interest carryovers, also without restriction by any taxable income

limitation for the years in which they were generated, is consistent with the statutory scheme for the unlimited allowance of capital loss carryovers.

With the increased differences between the higher marginal rates on ordinary income and long-term capital gain, new restrictions on the allowance of deductions of investment interest, including investment interest carryovers, with respect to long-term capital gains have been added to section 163(d) by the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13206(d)(1), 107 Stat. 467. However, these restrictions do not seriously compromise the existing scheme in which capital loss carryovers and investment interest carryovers continue to be available in tandem to be applied against capital gains.

---

TANNENWALD, *J.*, dissenting: With all due respect to the Court of Appeals for the Fourth Circuit, I would adhere to our prior decision in *Beyer v. Commissioner,* 92 T.C. 1304 (1989), revd. 916 F.2d 153 (4th Cir. 1990). I find the analysis of the majority and the Court of Appeals in support of the opposite conclusion unpersuasive in terms of the language of section 163(d), its relevant legislative history, and the policy underlying its enactment.

The critical issue herein is the meaning of the phrase "not allowable" in section 163(d)(3)(E). The majority and the Court of Appeals take the position that the phrase means "not permitted" and that, because interest is generally deductible under section 163(a), it is "permitted" and therefore, to the extent that it is subject to the limitation of section 163(d)(1), such interest is "not allowable as a deduction *solely* by reason of" (emphasis added) that limitation. Sec. 163(d)(3)(E). In support of this analysis, the majority points to section 1016(a)(2), which deals with the reduction of basis by the amount of depreciation "allowed" but "not less than the amount allowable". The Court of Appeals in *Beyer v. Commissioner, supra,* also points to provisions such as those of section 265, which specifically disallow the deduction of interest incurred to purchase tax-free obligations.[1]

---

[1] Cf. sec. 264 (amounts paid in connection with insurance, or annuity contracts), sec. 266 (car-

Section 1016 is not analogous in that it deals with a reduction in basis rather than a deduction and represents specific legislative action based on a solid policy foundation which, as will subsequently appear, is lacking in the instant situation. See *Virginian Hotel Corp. v. Helvering,* 319 U.S. 523 (1943). As far as section 265 and similar provisions, which *specifically disallow* certain deductions, are concerned, it does not necessarily follow, from the *absence* of a specific statutory provision disallowing the deduction of interest in excess of taxable income, that section 163(d)(2) should be given an *affirmative gloss to allow* such a deduction.

The fact of the matter is that a reading of the legislative history of section 163 shows that Congress was directing its attention to situations where taxpayers, in the shelter area, were currently deducting from unrelated income the excess of investment interest expense over investment income. Such being the case, the meaning of the phrase "not allowable" can be related to usability. Indeed, a meaning of permissibility instead of usability runs counter to the principle that a negative income concept has no place in the application of the tax law except as specifically recognized by Congress, for example, in section 172 relating to net operating loss carrybacks and carryforwards. Cf. *Tebon v. Commissioner,* 55 T.C. 410 (1970), where we rejected the taxpayer's contention that for the purpose of income averaging under section 1302, the term "taxable income" must include "negative taxable income" and held that taxable income could not be less than zero. See also *Title Ins. & Trust Co. v. United States,* 654 F.2d 604 (9th Cir. 1981). To be sure, the validity of a regulation was involved in these cases, but the regulation could not have been sustained if the phrase "taxable income" used in defining "base period income" under section 1302 had a clear meaning which included a negative amount.

In short, I am not persuaded that the meaning of "not allowable" is as set in concrete as the majority concludes, particularly since acceding to petitioners' position and that of the Fourth Circuit would have the effect of allowing a deduction, which was clearly not allowable prior to the enactment of section 163, without a specific expression by Congress of

---

rying charges which are chargeable to a capital account), and sec. 267 (interest with respect to transactions between related taxpayers).

its intent to do so. In this context, I think it significant that the heading of section 163(d) is *"Limitation* on Interest on Investment Indebtedness" (emphasis added)—an element which the majority conveniently ignores. Under these circumstances, I think that the statutory language at issue herein is sufficiently ambiguous to permit interpretative analysis so as to give effect to the intent of Congress and the policy objective of section 163(d) as a whole. See *Fehlhaber v. Commissioner,* 94 T.C. 863, 865-866 (1990), affd. 954 F.2d 653 (11th Cir. 1992); see also *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84 (1934).

The critical elements of the legislative history are dealt with in the majority opinion herein as well as in our prior opinion in *Beyer v. Commissioner,* 92 T.C. at 1308-1310, and that of the Court of Appeals, *Beyer v. Commissioner,* 916 F.2d at 156-157, and do not require repetition.[2] However, a few comments on the majority's and the Fourth Circuit's interpretation of that history are in order. While it is true that the Senate did not enact the House version of section 163(d) in 1969, neither did it reject that version; the Senate simply accepted the suggestion of the executive branch at the time that action on excess investment interest be deferred pending further investigation of some of the problems the House version appeared to present. Further, I do not attach the same importance as the majority does to the fact that the original 1969 bill to which the above-mentioned House report related, H.R. 13270, sec. 221, 91st Cong., 1st Sess. (1969), was phrased in terms of the amount of "disallowed investment interest" which was "disallowed as a deduction" and was changed to "not allowable as a deduction" in the 1969 act. The change seems simply to have been designed to avoid the redundancy of using the word "disallowed" twice in the same provision. Moreover, the interchangeable use by Con-

---

[2] For convenience, I list the various legislative documents which are involved herein: H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 245-246; H. Conf. Rept. 91-782 (1969), 1969-3 C.B. 644, 657-658; Staff of the Joint Comm. on Internal Revenue Taxation, General Explanation of the Tax Reform Act of 1969 (J. Comm. Print 1970); H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 794; S. Rept. 94-938 (Part 1) (1976), 1976-3 C.B. (Vol. 3) 49, 106-107; H. Conf. Rept. 94-1515, at 417-418 (1976); Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 1) 411; H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1, 296-301; S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 802-808; H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 1, 151-154; Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987).

gress of words and phrases such as "allowed" and "allowable" is reflected elsewhere in the Code. See, e.g., sec. 170(a)(1).

Thus, the provision in the House report in 1969 specifically stating that the excess of disallowed investment interest over taxable income shall not be available as a carryover constitutes some reflection of legislative intent since, with modifications not relevant to the issue involved herein, Congress adopted the House version. See H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 246; see also *Beyer v. Commissioner,* 92 T.C. at 1308-1309. The same view is expressed in the General Explanation of the Tax Reform Act of 1969, prepared by the Staff of the Joint Committee on Internal Revenue Taxation, at 100 (J. Comm. Print 1970) (the Blue Book), a publication which we are entitled to take into account. See *Beyer v. Commissioner,* 92 T.C. at 1309 n.4. This view was again articulated at the time section 163(d) was amended by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 209, 90 Stat. 1520, 1542. See *Beyer v. Commissioner,* 92 T.C. at 1309-1310.

The Fourth Circuit dismissed the foregoing legislative history by noting other comments in the 1969 conference report and the 1976 Blue Book, which contain references to "unlimited" carryover of excess interest expense, references I view as having a time (how long) rather than a definitional (how much) significance.

Petitioners also refer to the legislative action in 1986, which made substantial changes in section 163(d), as supporting their reading of the phrase "not allowable" and to respondent's Publication 550 entitled "Interest Income and Expenses" as representing a change of position on respondent's part. Leaving aside the question of the proper treatment of excess investment expenses incurred in years subsequent to 1986, a situation not before us herein, I do not find petitioners' references as illuminating as they suggest. Indeed, this lack of illumination may well explain the failure of petitioners to cite any specific supporting references in such material.

As far as underlying policy is concerned, I do not disagree with the majority that adoption of petitioners' position will enable taxpayers to match investment expenses with investment income as realized. Nor do I disagree with the Court of Appeals' observation that the absence of a full carryover

may, over the long run, prevent this matching by taxpayers who have little noninvestment income. It is important to note, however, that the policy thus invoked was neither a primary nor an independent ground for legislative action. Rather, it was articulated as a supporting reason for enacting the limitation of section 163(d) in order to deal with the then-existing abuse in the shelter area where taxpayers were in fact currently benefiting from an investment interest deduction in excess of investment income. See H. Rept. 91-413 (Part 1), *supra,* 1969-3 C.B. at 245. As felicitous as it may be to provide for matching of investment income with investment expenses and for minimizing the loss of tax benefits which may flow from my position on the issue herein, it is up to the Congress and not this Court to make provision accordingly. In this connection, I think it significant that section 172, which deals with carryovers, specifically limits its benefits to business losses and excludes nonbusiness losses. The majority's conclusion as to the scope of section 163(d) represents an erosion of the dichotomy embodied in section 172.

If one concludes, as the majority and the Fourth Circuit do, that "not allowable" means "not permitted" and does not encompass deductions permitted but not used, it follows that section 163(d) does not "create" a deduction. See *Beyer v. Commissioner,* 916 F.2d at 155. However, if one concludes, as I do, that "not allowable" should be given the broader interpretation, then the action of the majority herein, as well as that of the Fourth Circuit, does *create a deduction* in the context of a statute which is labeled and was intended to be a *limitation* on an otherwise usable deduction.

I would hold that disallowed investment interest expense in excess of taxable income fails to qualify as an amount that is "not allowable * * * *solely* by reason of" (emphasis added) the limitation of section 163(d)(1) and that consequently petitioners may not carry over such excess to subsequent years.

PARKER, COHEN, GERBER, COLVIN, and HALPERN, *JJ.*, agree with this dissenting opinion.